## Estate of Charles Baeder, deceased.    Appeal of Julia Baeder, Executrix.

*Wills—Trusts and trustees—Discretion of trustee—Spendthrift trust.*

Testator directed as follows : " I direct my trustees to pay to each of my
sons as they respectively attain twenty-one years of age five thousand dol-
lars ; and on their attaining twenty-five years of age I empower my trustees
to pay or transfer to them respectively such further sum or property as shall
together with the amount theretofore received by them from myself as an
advancement or under this will amount to the half of their share in my
estate ; the same being divided into as many shares as there are children or
the issue of deceased children.   This power is to be exercised either in the
whole or partially and from time to time as my trustees shall deem proper
looking to the habits, condition and circumstances of my said sons respec-
tively.   The residue of the share of my sons shall be retained by my trus-
tees " upon a strict spendthrift trust.   If a son died without issue the share
" held in trust " was to be a part of the residue of testator's estate.   A son
died without issue after the age of twenty-five without the trustees having
exercised adversely their discretion to pay over to him one half of his share.
*Held*, that the share over which the trustee had the discretionary power
passed to the son's estate, and was payable to his executrix.

Argued Feb. 2, 1897.   Reargued Jan. 31, 1899.   Appeal,
No. 558, Jan. T., 1896, by Julia Baeder, executrix, from de-
cree of O. C. Montgomery Co., Oct. T., 1896, No. 101, overrul-
ing exceptions to auditor's report.   Before GREEN, WILLIAMS,
MITCHELL, DEAN and FELL, JJ., on argument.   Before STER-
RETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ., on
reargument.   Reversed.

Exceptions to report of auditor, Montgomery Evans, Esq.

On exceptions to the auditor's report WEAND, J., filed an
opinion in which he stated the facts as follows :

By the will of the testator it is provided, inter alia, as follows :

" With intent to pass all my estate and to exercise all powers
I give and devise as follows, etc.

" Fourth. I direct that my wife shall receive out of the clear income of my estate real and personal as the same accrues so long as she remains my widow, the one-half thereof. In the event of her marriage I devise and bequeath to her one-fourth of the clear income of my estate to be paid to her by my trustees in full of all claims on my estate. Subject to the foregoing provisions I direct that all my estate and property shall be divided into as many shares as I may leave children or the issue of deceased children.

" Fifth. I direct my trustees to pay to each of my sons as they respectively attain twenty-one years of age five thousand dollars; and on their attaining twenty-five years of age I empower my trustees to pay or transfer to them respectively such further sum or property as shall together with the amount theretofore received by them from myself as an advancement or under this will amount to the half of their share in my estate; the same being divided into as many shares as there are children or the issue of deceased children. This power is to be exercised either in the whole or partially and from time to time as my trustees shall deem proper looking to the habits, condition and circumstances of my said sons respectively. The residue of the share of my sons shall be retained by my trustees and the income paid to the said sons respectively as and when it accrues during their respective lives without liability to be taken in execution by their creditors, and without liability to their debts, contracts or engagements, but solely for their own use and paid them upon their own receipts or applied for their maintenance only.

" Sixth. As to the shares of my daughters I direct that as my daughters respectively attain twenty-one years of age or marry or having done so before my death my said trustees shall pay or assign to each of them such sum or property as together with the amount which may have been received by them respectively as an advancement shall be equal in value to one-fourth of their share of my estate. The remaining three-fourths shall be retained by my trustees and the income as it accrues shall be paid to my said daughters during their lives respectively but so that the same shall not be liable to their debts, contracts or engagements or subject to their control or that of their husbands but so that they shall receive the net income

after it has accrued for their own separate use and without the power to anticipate the same by themselves their husbands or anyone else.

"Seventh. Upon the death of my said sons and daughters respectively, the shares, property and estate so held in trust for them shall pass to their children and the issue of deceased children, such issue taking their parent's share. If there shall be no issue of my children respectively, living at the time of their deaths, then I direct that the share of such deceased child shall constitute a part of the residue of my estate and shall pass under this will as if such child had died before me. This provision shall extend to original and accrued shares derived under this will. In case of my sons leaving widows I direct that such widow shall enjoy during widowhood one-third of the income of the share of my estate which their respective husbands were during their lives entitled to receive from my trustees."

Amongst his surviving children were William A. Baeder, who subsequently died leaving no issue but a widow, Emily D. Baeder, who, on April 5, 1893, married H. R. Shirk. William A. Baeder was at the time of his decease a resident of New York. He left a last will, etc., wherein he directed his executrix to pay all his debts, and gave all his property, real and personal, unto his widow absolutely, and appointed her sole executrix, etc.; also Charles B. Baeder, who is also since deceased, leaving a widow, Julia Baeder, and leaving a last will, etc., whereby he devised and bequeathed all his property in trust for his widow and appointed her sole executrix, etc.; also Josephine Barton, a daughter, a lunatic; and Henry H. Baeder, a son.

Henry H. Baeder failed in business during the lifetime of his father, and the executor and trustee exercised its discretion conferred by the fifth item of the will as to his share, and declared that it did not deem it advisable that further payments of the principal of his share of the estate should be made to him.

The trustee was never formally called upon and never did, in fact, exercise the discretion reposed by said fifth item of the will as to the shares of the other sons, Charles B. Baeder and William A. Baeder. The legacy of $5,000 "to each of my sons" was paid. The advancements to the sons were equalized

by former distributions, so that each received the sum of $6,135.50.

The executrix of the will of Charles B. Baeder and the executors of the will of William A. Baeder claimed for said estates respectively an amount which, added to that already paid their testators, would amount to one half of their shares of the estate of their father. Attaching judgment creditors of Henry H. Baeder made a similar claim.

The court held, sustaining exceptions to the auditor's first report, that the share over which the trustees had a discretionary power was not payable to the executrix of Charles B. Baeder, but passed as a portion of the residue of the estate of Charles Baeder.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John G. Johnson,* for appellant.—We cannot read this clause of the fifth paragraph and reach a conclusion that the testator meant only to give a moiety to the sons if the trustees should deem it proper that they should receive the same. He gives the share to the sons, and permits the trustees to do nothing more than to withhold the payment under certain designated circumstances, to be determined by them as sufficient.

We do not have the case of an exercise of this discretion by the trustees adversely to the son. It is not pretended that if he had lived he would not have been allowed to receive his share in distribution. No conclusion that it would be right because of "the habits, condition and circumstances" of Charles B. Baeder was ever reached by the trustees.

We submit that unless they decide adversely to him because of such "habits, condition and circumstances," his right to receive was absolute. Inasmuch as there was no such decision before his death, his share passed thereafter as part of his estate.

The court will always strive to construe this class of powers into trusts, which will give the donee a vested interest, and the trustee only the power of selection, apportionment and distribution : Perry on Trusts, sec. 508.

*Richard C. Dale,* with him *James P. Townsend, William*

*Henry Lex* and *George Junkin*, for appellees.—Until the trustees have acted affirmatively, and "paid or transferred" money out of the trust, and to the son, he is given nothing. . He gets, and can get, nothing.

The trustees are "empowered" to act, not "directed." The exercise or nonexercise is, as "they shall deem proper." It is "power," coupled with no trust.

OPINION BY MR. JUSTICE MITCHELL, April 10, 1899:

Item fifth of the will provides: " Fifth. I direct my trustees to pay to each of my sons as they respectively attain twenty-one years of age five thousand dollars; and on their attaining twenty-five years of age I empower my trustees to pay or transfer to them respectively such further sum or property as shall together with the amount theretofore received by them from myself as an advancement or under this will amount to the half of their share in my estate ; the same being divided into as many shares as there are children or the issue of deceased children. This power is to be exercised either in the whole or partially and from time to time as my trustees shall deem proper, looking to the habits, condition and circumstances of my said sons respectively. The residue of the share of my sons shall be retained by my trustees " upon a strict spendthrift trust. One of the sons having died without issue after the age of twenty-five, but before payment to him of anything but the $5,000 when he reached twenty-one, a controversy arises over the meaning of the word "residue " in the sentence last quoted. The auditor held it to include only such part of the share of each son as the trustees had affirmatively refused to pay over without regard to the actual payment; the court on the contrary held that it included all of the share that the trustees had not affirmatively taken out of the trust by paying it over; and finally the appellant claims that it included the full half of the share not put in mandatory trust, without reference to the action of the trustees, whose discretion ended with the death of the son. The case is not without difficulty, as is apparent from the widely discrepant views already taken, and the fact that this Court found it necessary to order a reargument before a full bench.

It is always a safe rule in approaching the interpretation of a word or phrase to start with a clear view of the testator's gen-

eral intent, or, as it is frequently called, the scheme of his will In the present case it will be found helpful. Subject to the provision for his widow, which is of primary obligation, the testator divides his whole estate into as many shares as he leaves children or the representative issue of deceased children. Next, he gives each son one half his share, payable $5,000 at twenty-one, and thereafter the income absolutely, and the principal after the age of twenty-five from time to time in the discretion of the trustees. Lastly, he leaves the residue of each share in strict trust. Prima facie, this " residue " must mean the other half, the portion left after the distribution of the half which the first clause has provided for. Unquestionably his general intent was that his sons should have control and disposition of one half their shares, and should not have control of the other half. This will be clear if we suppose the testator or his draughtsman had simply reversed the order of his expression of his will and put the trust first. It is hardly to be doubted that he would have said " one half of the share shall be retained by my trustees," etc., and then the provision for payment of the other half, which was not primarily intended to be beyond their control as part of the mandatory trust, but to be confided to the son's own control, though subject as to the time of payment to the conditions named. This reversal of the order makes no change in the meaning or in the intent apparent throughout the whole fifth item, though it leads naturally to the use of the word half in place of "residue " in describing the trust, and thereby illustrates the meaning of " residue " as actually used.

There is nothing in the proper meaning and use of the word residue which is distorted by this construction. Coming in the order that it did, there were reasons why it should have been used instead of half. While it was not certain that there would be any more than half the share to go in trust, yet there might be, as will be considered on another branch of the case. If testator had used the word half in making the trust he might have raised a question as to whether under any exercise of the trustee's discretion more than half could be included in the trust. He was attentive to the possibility of too literal construction of his words as is shown by his careful definition of the expression " share of such deceased child " in item seven, where he specifically declares that it shall " extend to original and accrued

shares derived under this will." If he had reversed the order as suggested, for illustration, and stated the trust as to one half first, he would have had to add some other provision to cover any sums out of the second half that his trustees should determine not to pay to the sons, if it was his intention that such sums should go to increase the amount in trust. But conceding that to be his intention, in the order of arrangement that he adopted, the word "residue" was an appropriate term to describe the half peremptorily put in trust, and the possible additions to result from the action of the trustees.

If we approach the question from the technical side, the result is the same. Precedents, as said by this Court in Redding v. Rice, 171 Pa. 301, are of little value in the construction of wills, but there are certain well-settled rules in regard to trusts, whether testamentary or other, that must be regarded. The entire shares of the sons in this will are left in trust as to each until he reaches the age of twenty-one ; then the trust ends as to $5,000, but continues as to the rest until twenty-five, when a new duty arises on the part of the trustees, to determine whether a further portion of the share, not to exceed half in all, shall be paid. The testator " empowers " the trustees to make such payments, but the power clearly belongs to that class which in trusts is equivalent to a direction. In fact it is called by the testator himself a direction in referring to it in the seventh item of his fourth codicil. " All directions for payment to my sons and daughters of any share of the principal of my estate," etc. The time and manner of payment were left to the discretion of the trustees, based on habits, condition and circumstances of the son in each instance, but the testator intended that the power should be exercised, and his expression of authority was in effect a command. Until it was exercised that part of the share remained in what may be called the secondary branch of the trust, with a duty to be performed, but the time left to the trustee. It could not pass into the last branch of the trust until the final determination of the trustees adverse to the payment, for the discretion was meant to last as long as the habits and circumstances of the son were open to change, that is, during life, and when once the share passed into the last imperative trust, all further authority to pay was at an end. Until such final exercise of discretion adverse to payment, no part of the

first half of the share could become part of the " residue " which
was to go into strict trust, but thereupon it might do so, and that
possibility may have been one of the reasons leading the testa-
tor to the use of the word " residue " in describing the subject
of the final trust.

We do not get any assistance from the provisions of the will
relating to the shares of the son's widows, or of the daughters.
The former manifestly refer to the estate after it reaches the
spendthrift trust, and throw no light on the preliminary ques-
tion of what is to go there.   The bequest to the daughters was
of one fourth of their shares absolutely on coming of age or
marrying, and three fourths in strict spendthrift trust.   No dis-
cretion as to either part is left to the trustees, and no light is
thrown on the subject of discretion in the trustees as to the
shares of the sons.

The general intent of the testator, as already said, contem-
plated that the sons should have control of half their shares,
yet the time of coming into such control was subject to condi-
tions.   The power of the trustees to pay is " to be exercised
either in whole or partially, and from time to time as my trus-
tees shall deem proper, looking to the habits, condition and cir-
cumstances of my said sons respectively."   Under this provision
the time of payment was within the discretion of the trustees,
but this discretion must be based on " habits, condition and cir-
cumstances " of the son, and when this personal basis of judg-
ment has been removed by the death of the son the authority
to longer postpone payment must fall with it.   It is found by
the auditor, and conceded in the argument, that there was no
exercise of the discretion of the trustees adverse to the payment
of his full half to Charles B. Baeder, and that the payment was
deferred for other reasons connected with the general adminis-
tration of the estate.   On his death, therefore, the right to the
unpaid portion of his half share passed into his estate, and it
became payable to his executrix, the appellant.

Decree reversed as to this appellant, and distribution directed
to be amended in accordance with this opinion.