RoBards v. Brown.

---

## RoBARDS, Appellant, v. BROWN et al.

### Division One, March 12, 1902.

| 167 | 447 |
|-----|-----|
| 168 | ¹667 |
| 168 | ²671 |
| 167 | 447 |
| 177 | ²353 |
| 177 | 354 |
| 167 | 447 |
| 179 | ²626 |

1. **Will: LATENT AMBIGUITY: TWO POSSIBLE CONSTRUCTIONS.** If the ambiuity in a will is latent and two constructions are possible, one of which kills and the other preserves the life of the will, the court will adopt the latter construction, and will admit parol testimony showing the environments of the testator and his feelings towards the beneficiaries named and towards those naturally the objects of his bounty.

2. ———: **PRESUMPTION OF DISPOSITION.** The presumption is that the testator meant to dispose of his whole estate. And to prevent the incongruous condition of the estate passing partly by will and partly by descent, words may be supplied or transposed in the will, or if meaningless, wholly disregarded.

3. ———: ———: **VESTED REMAINDER BY NECESSARY IMPLICATION.** The testator gave one dollar each to his three sons and one daughter, then to his wife "for and during her life all of my estate and property, real and personal," and "in the event that my said wife should not be living at the time of my death," etc., his property was to be distributed equally between one son, and the one daughter and

two daughters-in-law, for their "sole and separate use, free from the control of their said husbands." *Held*, it was competent to introduce extrinsic evidence to show that the wife outlived testator and that at the making of the will, the two sons to whose wives were given the separate estates, were insolvent, had failed in business and judgments were pending against them, and that the husband of the daughter was a confirmed inebriate, and these facts being shown, the intention of the testator was: First, to prevent his son's creditors from reaching or sharing in his estate; second, to provide for his wife for life, if she survived him; third, after her death, whether before or after his own, to provide for his children and their families. *Held*, therefore, that the will devised a life estate to the wife, and a remainder in fee simple to the devisees named, and that only one dollar and no more was given to the two sons to whose wives one-fourth each was given in remainder.

4. ——: ——: ——: DISREGARDING WORDS. The words, "In the event that my said wife should be living at the time of my death," etc., used in this will, should be disregarded, not as creating a condition upon which the remainder in fee is to become operative, but as wholly superfluous and meaningless, since they provide for no contingency which is not fully provided for by law.

Appeal from Hannibal Court of Common Pleas.—*Hon. W. M. Boulware*, Special Judge.

AFFIRMED.

*John L. RoBards* and *F. L. Schofield* for appellant.

(1) The laws of the land require that "every will shall be in writing, signed by the testator . . . and attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." R. S. 1889, sec. 8870; R. S. 1899, sec. 4604. Therefore extrinsic evidence is not admissible to furnish data for guesswork interpretation contrary to the plain words and structure of testator's will, because it makes a will not in writing for him that he did not and could not lawfully make for himself. "Since the statute of frauds, which requires wills to be in writing, parol evidence, or evidence *dehors* the will, is not admissible to vary

or control the terms of the will, although it is admissible to remove a latent ambiguity." 1 Story, Equity Juris. (7 Ed.), sec. 179; Wells v. Wells, 10 Mo. 194. "Seek to cut out one paragraph in effect and set up a new one. Admit this doctrine and you may as well repeal the statute requiring wills to be in writing, at once. Witnesses will then make wills and not testators." Goode v. Goode, 22 Mo. 524; Hasenritter v. Hasenritter, 77 Mo. 165; Nichols v. Boswell, 103 Mo. 157; Hall v. Smith, 103 Mo. 294; Cross v. Hock, 149 Mo. 326; Garth v. Garth, 139 Mo. 464; Maryland v. Railroad, 22 Wall. 112. The contention of respondents is to strike out bodily the entire contingent condition precedent, "In the event that my said wife should not be living at the time of my death, then in that event I will that all my property, both real and personal, be distributed as follows:" "If he was so unfortunate as to intend one thing, and yet declare the opposite by the terms of his formal and final expression of intent, then the latter must ordinarily control." Mersman v. Mersman, 136 Mo. 256. Presumptions always yield to facts. Webb v. Hayden, 166 Mo. 39. (2) As there was no latent ambiguity on the face of the will, the court erred in admitting extrinsic evidence. "The only apology for parol proof, in any case, is the necessity of the thing, because the ambiguity is so complete as to elude all interpretation, and would destroy the devise altogether, unless explained." Mann v. Mann, 1 John. Chan. *236; Thompson v. Thompson, 115 Mo. 72; Davis v. Davis, 8 Mo. 56; Schorr v. Carter, 120 Mo. 413. Unless from the provisions of the will the intention of the testator be doubtful or uncertain, extrinsic evidence is not admissible. Rothwell v. Johnson, 147 Mo. 613. (3) The devise to Delia A. Brown never vested because based upon a contingent condition precedent, viz., the death of Charlotte Brown prior to the death of George Brown, Sr., that never happened. 2 Redf. Wills (2 Ed.), ch. 2, sec. 3, par. 1, 2, 3,

7 and 8, p. 283; 2 Sharswood, Black. Com., *154; Finley v. King, 3 Pet. (U. S.) *375; 4 Kent. Com. (10 Ed.), *125; Prosser v. Hardesty, 101 Mo. 597; Long v. Timms, 107 Mo. 512; Jarbee v. Hey, 122 Mo. 347; Mersman v. Mersman, 136 Mo. 259; Watson v. Watson, 110 Mo. 171; Given v. Helton, 95 U. S. 591; Owen v. Eaton, 56 Mo. App. 536; McQueen v. Lilly, 131 Mo. 17.   (4)   The heir, John J. Brown, was vested with one-fourth interest in his father George Brown's estate, subject only to the devise to the widow, because there was no disposition of it to some other person; as to that interest George Brown died intestate, for the devise to Delia A. Brown, who can only take under express force of the will, was based upon a contingent condition precedent that never happened. R. S. 1889, sec. 4465; R. S. 1899, sec. 2908; Norcum v. D'Oench, 17 Mo. 117; Eneberg v. Carter, 98 Mo. 651; Watson v. Watson, 110 Mo. 170; Redman v. Barger, 118 Mo. 575; Talbott v. Hamill, 151 Mo. 298; Hurst v. Von de Veld, 158 Mo. 247; Patterson v. Camden, 25 Mo. 21; Scott v. Scott, 95 Mo. 318; Maryland v. Railroad, 22 Wall. 112.

*Thomas H. Bacon* for respondents.

The restrictive clause simply expressed a reason for bestowing the entire estate instead of a residuary.   The event did not condition the fee-simple devises, but merely furnished the reason for bestowing "all" instead of the vested remainders. Skipwith v. Cabell, 19 Gratt. 758; 1 Williams' Executors (7 Ed.), part 1, book 2, p. 231; List of Sustained Wills, p. 234; 2 Jarman on Wills (6 Am. Ed.), ch. 27, pp. 3 and 4.

MARSHALL, J.—Ejectment for an undivided one-fourth interest in the east one hundred feet in lot 2, block 37, in the city of Hannibal, Missouri.   The defendants prevailed in the lower court, and the plaintiff appealed.

The petition is in the usual form, and the ouster is laid as of January 16, 1899. The answer denies title, or right to possession, in the plaintiff, and asserts the fee simple title to be in defendant, Delia A. Brown (wife of John J. Brown), William G. Brown, Charlotte B. White (and Shirley A. White jointly), and Mary V. Brown, each owning an undivided one-fourth interest, and further avers possession to be in John J. Brown, as their tenant, by the month. The reply is a general denial. George Brown is the common source of title. The defendants claim as devisees under his will. The plaintiff claims under a sheriff's deed, resting upon a judgment against John J. Brown, who was a son of George Brown, and upon the proposition that George Brown died intestate, except as to a life estate left to his widow, which has terminated, and, hence, the plaintiff has succeeded to the rights of John J. Brown, in the estate of his father, George Brown.

The case was tried, in part, upon the following agreed statement of facts:

"Said parties, plaintiff and defendants, agree that in the trials of the above cause the following facts are conceded and that neither party will be required to make further proof thereof than this agreement:

"1. That George Brown, senior, being a citizen of Hannibal, Missouri, died on March 22, 1897, seized in fee owner of the property described in the petition, viz., the east 100 feet of lot 2 in block 37 in Hannibal, Missouri.

"2. That at the time of his death, said George Brown, Sr., left surviving him, his widow Charlotte Brown, his son John J. Brown, his son William G. Brown, his grandsons Arthur V. Brown and George Brown, sons of said George Brown, Sr.'s, son, Joshua V. Brown, who died intestate June 1, 1895, and the grandson of said George Brown, Sr., Shirley A. White, and the granddaughter of said George Brown, Sr., Charlotte B. White, children and sole heirs at law of George Browns, Sr.'s, daughter, Mary B. White, who died intestate

October 8, 1893; all residents of Hannibal, Missouri.    Said William G. Brown was at no time insolvent and he died July 4, 1899, leaving a widow, Mary W. Brown, and one child, a son, William G. Brown.

"3.    That Mrs. Charlotte Brown, widow aforesaid, occupied said premises at the time of her death, which event occurred on January 14, 1899.

"4.    That the entire monthly value of the rents and profits of said premises is $10 per month.

"5.    That in the year 1890, W. K. White, a resident of Hannibal, Missouri, and the husband of said Mary B. White, became a confirmed inebriate and unable to support his wife or children, and that he so remained up to the time of the death of said George Brown, Sr.

"6.    That in the year 1873, said Joshua V. Brown and said John J. Brown, residents of Hannibal, Missouri, copartners carrying on a jewelry store, failed in business at said city, that judgments were rendered against them and unsatisfied at the time of the death of said George Brown, Sr., said John J. Brown and the estate of Joshua Van Brown, deceased, remained insolvent.

"7.    That during all said time, George Brown, Sr., was a resident of Hannibal, Missouri, and was personally cognizant of all said facts and circumstances.

"8.    That said John J. Brown claims solely as tenant under the alleged devisees of said George Brown, Sr.

"9.    That said Delia A. Brown claims the undivided one-fourth of the premises in suit in her own right by alleged devise from said George Brown, Sr., and the remaining three-fourths as tenant under other alleged devisees of said George Brown, Sr.

"10.    That John J. Brown, on March 13, 1899, executed and delivered to Delia A. Brown, a quitclaim deed to the property described in the petition for the consideration therein

expressed of love and affection and one dollar; that said deed has been duly recorded.

"11. To any of the aforesaid facts or alleged facts, the plaintiff, of the one part, and both defendants of the other part mutually reserve the right to enter objection on grounds of irrelevancy and incompetency, and to except to any ruling of the court overruling or failing to sustain such objections.

"This stipulation is not exclusive of other evidence."

The plaintiff read in evidence the first, second (except the last clause thereof), third, fourth, eighth, ninth, tenth and eleventh paragraphs of this agreed statement and then introduced in evidence the sheriff's deed, dated November 20, 1897, and based upon a judgment in favor of the plaintiff and against John J. Brown, rendered May 14, 1889, and proof as to the value of the monthly rents, and then rested.

The defendants read in evidence the will of George Brown, which is as follows:

"I, George Brown, Sr., of the city of Hannibal, Marion county, Missouri, of sound mind and disposing memory, do make, declare and publish, this my last will and testament, hereby revoking all other wills heretofore made by me.

"1st. I direct that all of my just debts, the expenses of my last sickness, and my funeral expenses be first paid out of my estate by my executors, hereinafter named.

"2nd. I give and bequeath the sum of one dollar to each of my children, namely, J. Van Brown the sum of one dollar, to John J. Brown the sum of one dollar, to William G. Brown the sum of one dollar, to Mary B. White, the wife of W. K. White, the sum of one dollar.

"3. To my well-beloved wife, Charlotte Brown, for and during her widowed life, and as long as she remains single, I give, devise and bequeath all of my estate and property real and personal, consisting of town lots and the improvements thereon, all of my stock in trade in my store at No. 307 Broadway, Hannibal, Missouri. Also all bonds, bank stock,

money, store-fixtures and household furniture. All of said real and personal property herein devised and bequeathed, lying and being in the city of Hannibal, Marion county, Missouri.

"In the event that my said wife should not be living at the time of my death, then in that event, I will that all my property both real and personal be distributed as follows:

"To my daughter, Mary B. White, wife of W. K. White, to her sole and separate use free from the control of her said husband, I give and devise a one-fourth interest of, in and to all the real estate, of which I may be possessed at the time of my death, wherever the same may be situate. I also give and bequeath to her, to her sole and separate use, free from the control of her said husband, a one-fourth interest in and to any personal property, consisting of money, bank stock, stock in trade, and household furniture of which I may be possessed at the time of my death.

"To my beloved daughter-in-law, Mary V. Brown, wife of my son J. Van Brown, to her sole and separate use, free from the control of her said husband, I give and devise a one-fourth interest of, in and to all the real estate of which I may be possessed at the time of my death, wherever the same may be situate. I also give and bequeath to her, to her sole and separate use, free from the control of her said husband, a one-fourth interest in and to any personal property, consisting of money, bank stock, stock in trade, and household furniture of which I may be possessed at the time of my death.

"To my beloved daughter-in-law, Delia A. Brown, wife of my son John J. Brown, to her sole and separate use, free from the control of her said husband, I give and devise a one-fourth interest of, in and to all the real estate of which I may be possessed at the time of my death, wherever the same may be situate. I also give and bequeath to her, to her sole and separate use free from the control of her said husband, a one-fourth interest in and to any personal property, con-

sisting of money, bank stock, stock in trade and household furniture of which I may be possessed at the time of my death.

"To my son, William G. Brown, I give and devise a one-fourth interest of, in and to all my real estate, of which I may be possessed at the time of my death, wherever the same may be situate. I also give and bequeath to him a one-fourth interest in and to any personal property, consisting of money, bank stock, stock in trade, and household furniture of which I may be possessed at the time of my death.

"I hereby appoint my son John J. Brown and my son William G. Brown, executors of this my will, and it is my request that the said parties be not requested to give bond.

"In witness whereof I have this day, the fifth day of April, A. D. 1892, signed and sealed and published and declared this instrument as my will, at Hannibal, Missouri."

The defendants also, over plaintiff's objections, read in evidence articles 5, 6, 7, and the last two lines of article 2 of the agreed statement.

The defendants also read in evidence two executions that were issued upon the judgment of the plaintiff against John J. Brown, the first, dated April 4, 1892, and the second, under which the property in question was sold, dated March 27, 1897.

The defendants also read in evidence the abstracts of five other unsatisfied judgments against John J. Brown, rendered between September, 1879, and September, 1888.

The defendants, over the plaintiff's objections, also introduced evidence tending to show that the testator knew when he executed the will that these judgments were outstanding against his son John J. Brown, and that his said son had been insolvent for more than ten years before the will was executed. Also that the plaintiff knew of the terms of the will before he purchased the property at the sheriff's sale.

The plaintiff asked and the court refused to instruct

that the will conveyed a life estate to the widow and was in-
effectual in all other respects, and that John J. Brown became
the owner of one-fourth of the property in controversy, under
the statute of descents, upon the death of the father, subject
to the life estate of the widow, which interest of John J.
Brown passed to the plaintiff by the sheriff's deed. On the
contrary, the court instructed the jury that the will of George
Brown passed the entire estate, and that no title descended
to John J. Brown, and hence the verdict must be for the de-
fendants.

After proper steps, the plaintiff appealed.

## I.

The statute of wills gives every man the power to dispose
of his property after his death. Courts will respect and com-
pel juries to respect his intention. Neither courts nor juries
can by construction make a will. Their proper province is
to interpret the will, not to substitute their notions as to the
proper disposition of the estate, for those of the testator. If
the testator is of sound and disposing mind, and knows what
he owns and is mindful of the existence of those who have
a 'natural claim to his bounty; if he is not unduly or improp-
erly influenced and no fraud is perpetrated upon him, in other
words, if the will is his act and not the result of the mind and
wish of another over him, the will is his and his intentions
must be observed. These competent conditions and necessary
prerequisites having been ascertained to exist, the next ques-
tion is, does the written document conform to the inflexible
rules of law? No forms of expression, no technical words
are required to constitute the paper a good will. The statute
requires every court to have due regard to the directions of
the will and the true intent and meaning of the testator. This
intent and meaning can be best ascertained by the court put-
ting itself, as far as may be, in the place of the testator and

reading the will in the light of his environment at the time the will was made. When the true intent and meaning can be thus ascertained, all technical rules of construction must give way. [Murphy v. Carlin, 113 Mo. 112; Hurst v. Von de Veld, 158 Mo. l. c. 246.] But it frequently happens that the language employed by the testator, or used by the scrivener, leave the meaning and intent of the testator in doubt. Then the necessity for judicial interpretation and adjudication arises. If there is such a patent ambiguity presented as makes the will impossible, the will fails because the true intention can not be ascertained from the will itself, for as no court can make a will, it can not permit witnesses to make it by telling what the testator intended. If, on the contrary, the ambiguity is latent and two constructions are made possible, one of which kills and the other preserves the life of the will, the court will adopt the latter construction, and will admit parol testimony showing the environments of the testator and his feelings towards the beneficiaries named and towards those naturally tied to him. [Webb v. Hayden, 166 Mo. l. c. 46.]

In the construction of a will, the court always starts with the presumption that the testator intended to dispose of his whole estate. [Watson v. Watson, 110 Mo. l. c. 170.] Here again the true intent must be ascertained and followed. In pursuance to this fundamental presumption, and to prevent the happening of the incongruous condition of the estate passing partly by will and partly by descent, words may be supplied, transposed or changed in the will so "that the instrument may not perish and the manifest intention of the parties be not defeated by the palpable error of the scrivener." [Briant v. Garrison, 150 Mo. l. c. 668, citing and following Rines v. Mansfield, 96 Mo. l. c. 398; Presnell v. Headley, 141 Mo. l. c. 194; Thomson v. Thomson, 115 Mo. l. c. 67; Nichols v. Boswell, 103 Mo. l. c. 160; Wolfe v. Dyer, 95 Mo. 545, and Johnson v. Bowlware, 149 Mo. 451.]

It only remains to apply these principles to the case at bar. The testator's presumed intention was to dispose of the whole estate by will and not simply to carve out a particular estate, dispose of it by will and leave the fee or remainder to be devolved by the statute of descents. His environments when he made the will were these: he had a wife; he had three living sons, Joshua Van Brown, John J. Brown, and William G. Brown, all of whom were married, and of whom John J. Brown at least was insolvent, and had judgments outstanding against him; he had one living daughter, Mary B. White, wife of W. K. White.

With these conditions in mind, he made the will in question in this case. After directing the payment of his debts and funeral expenses, he first gave to each of his children the sum of one dollar, and then he gave all his property to his wife "for and during her widowed life and as long as she remains single." No power of disposal was given. Then he added: "In the event that my said wife shall not be living at the time of my death, then in that event, I will that all my property both real and personal be distributed as follows:" that is, he devised to his daughter Mary B. White, to his daughter-in-law Mary V. Brown, wife of his son Joshua Van Brown, to his daughter-in-law Delia A. Brown, wife of his son John J. Brown, and to his son William G. Brown, one-fourth each of all his property. He then appointed his sons John J. and William G. Brown, his executors, without bond.

The plaintiff contends that the effect of this is that he died testate so far as to create a life estate in his wife, if she survived him, and intestate as to his children if his wife survived him, and if his wife did not survive him, then he died testate as to his children.

On the other hand, the defendants contend that the clear intent and purpose of the will was to provide a life estate for his wife and give the fee in equal parts to his daughter

Mary, his son William, and his two daughters-in-law, the wives of his two sons, John J and Joshua Van Brown, and that knowing their insolvency and that judgments were outstanding against John, he intended to take care of his said sons' families and not to allow any part of his estate to go to the payment of his sons' debts.

In other words, the plaintiff contends that the devise of the fee to his children and daughters-in-law was conditioned upon his wife being dead when the will took effect, and that as his wife was alive when he died, the devise to the children failed, and, therefore, only the devise to the widow for life and during widowhood remained, and the fee descended to his heirs subject to the life estate, and as the life estate is now terminated, he is entitled to the possession of the undivided one-fourth that descended to John J. Brown, by virtue of his purchase thereof at the sheriff's sale aforesaid. Or otherwise stated, the plaintiff contends that the will is to be read in two sections or divisions—the first to consist of all that precedes the clause that it is claimed constitutes the condition to-wit, "In the event that my said wife should not be living at the time of my death," etc., and the second to consist of all that follows that clause. If this be adopted as the true rule, and the will be read literally, and not as of the intention of the testator, and the words be read in their sequence only, the result is this: the four children would get one dollar each, and the widow a life estate, without power of disposal. The fee to all the balance would remain undisposed of by will. This construction is manifestly not the true construction, for it violates the fundamental presumption of law that the testator intended to dispose of his whole property by will and not to leave any part or estate therein to be devolved by the statute of descents.

The devise of only one dollar each to his sons John and Joshua, is full of meaning and significance. Such devises to insolvent sons and the giving of a proportionate share to their

wives, with the intent to provide for the daughters-in-law and the grandchildren and to prevent the creditors of the sons from being paid out of the testator's property, are not without precedent.    [Watson v. Alderson, 146 Mo. 333.]

But no such intent can be found for giving his daughter Mary and his son William only one dollar each, nor is there any inconsistency between the devise of one dollar to them by this clause and the devise of one-fourth of the fee in remainder to them by the subsequent clause of the will.    Several separate bequests may be given to the same person by different clauses of a will.    Therefore, to read the will in sections, as the plaintiff contends should be done, does not give full effect to the intention of the testator, and does not dispose of the whole estate by will, and would furthermore make possible the very condition the testator chiefly intended to prevent, to-wit, the possibility of his sons' creditors reaching any part of his estate to pay their claims against his sons.

This construction must therefore be discarded and rejected, if any other construction is possible.

The intention of the testator was plainly this: first, to prevent his sons' creditors reaching or sharing in his property; second, to provide for his wife for life, if she survived him and remained single; third, after his wife's death, whether before or after his will took effect, to provide for his children and their families, and to do it in such a manner as to exclude his sons' creditors from participating in any part of his estate.

This intention being plain, the only question remaining is, has the testator expressed it in such manner as not to vitiate his intention by using words and terms that violate some inflexible rule of law?    It is argued that the words:    "In the event my wife be not living at the time of my death," etc., have this effect.    Those words are wholly superfluous and meaningless, and the estates created by the will would be exactly the same and would take effect at exactly the same time,

and upon the same contingencies if no such words were in the will. Thus a life estate was devised to the wife. If she survived her husband, that estate would take effect at his death, and continue during her life, and the fee-simple estate in remainder would not vest in the children or devisees until the termination of the life estate. On the other hand, if the wife died before the testator, the life estate to her could never vest, and the fee-simple remainder would take effect at once. Hence, the words, "In the event my wife should not be living at my death," etc., provide for no contingency that is not fully provided for by law, and, therefore, those words serve no purpose whatever and should be discarded.

Neither do those words create a condition upon which the remainder in fee is to become operative. They are properly only words descriptive of when and not upon what condition the remainder in fee is to vest, which, as shown, is exactly what the law is without such words. [Skipwith v. Cabell, 19 Grattan 758.]

Stress is laid upon the words in this clause, following the words quoted, "then in that event, I will that *all my* property, both real and personal, be distributed as follows." And it is argued that the words, "all my property," could not be given effect, if the life estate in the wife vested, for in that event, all the property could not go to the remaindermen at his death. These words must be read as they were employed by the testator. The property all belonged to the testator at the time the will was written, and he was thinking of it and disposing of it then, and he did not use the term as of a time when death had terminated his earthly tenures.

The conclusion is unavoidable that the will devised a life estate to the wife, and a remainder in fee simple to the devisees named, and that John J. Brown was bequeathed only one dollar and nothing more. Therefore, there was nothing for the plaintiff's judgment against John to operate upon, the

sheriff's sale conveyed no title to the plaintiff, and the plaintiff has no cause of action.

The judgment of the lower court is right and it is affirmed. All concur, except *Valliant, J.,* absent.