LINDSEY v. ROSE. (No. 5455.)†

(Court of Civil Appeals of Texas. Austin. March 26, 1915. Rehearing Denied April 21, 1915.)

1. WILLS ☞674—EXPRESS TRUST—"SPEND-THRIFT TRUST."

A will and codicil which gave the testator's property to trustees to manage and collect the income, and to pay a fixed sum monthly to the testator's son, with power to make additional advancements if they should deem best, creates a "spendthrift trust," the essential element of which is inalienability and nonliability for the debts of the beneficiary.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1585; Dec. Dig. ☞674.

For other definitions, see Words and Phrases, First and Second Series, Spendthrift Trust.]

2. WILLS ☞686 — CONSTRUCTION—CODICIL—TRUST.

Where a will created a spendthrift trust in favor of testator's son, to continue for 25 years, and the principal then to be paid to the son, if living, a codicil which created no trust, was expressly declared to be a part of the will, and which provided that the "trusts herein created" should be continued during the life of the son, applied to the spendthrift trust, and continued it during the son's life after the expiration of the 25 years.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1631–1637; Dec. Dig. ☞686.]

3. WILLS ☞470—CONSTRUCTION—INTENT OF TESTATOR — SURROUNDING CIRCUMSTANCES.

In construing a will the intent of the testator, as expressed in the whole instrument when read in the light of the circumstances surrounding the testator when the will was written, must govern.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 988; Dec. Dig. ☞470.]

4. WILLS ☞687 — CONSTRUCTION — REMAINDER.

Where a will created a spendthrift trust in favor of testator's son for 25 years and provided that if the son should die during that period the property should go to testator's heirs, otherwise to the son, and a codicil extended the trust for the life of the son, but made no provision as to the disposition of the principal thereafter, and it appeared that the son was weak intellectually, and had become estranged from testator, who was more anxious to prevent the squandering of his property than to care for the son, and that testator had an affection for his collateral relatives, the intention of the testator was to vest the property in the collateral kindred on the expiration of the trust.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1638–1643; Dec. Dig. ☞687.]

5. WILLS ☞687 — CONSTRUCTION — SPEND-THRIFT TRUST—REMAINDER.

Even if it was the testator's intent after the execution of the codicil that the property should go to the heirs of the son, on the termination of the trust, it was his intention that it should go to them undiminished by any act of the son, and creditors of the son cannot levy on and sell the son's interest therein, and thereby acquire a right to the possession thereof at the termination of the trust on the death of the son.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1638–1643; Dec. Dig. § 687.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Suit for injunction by John K. Rose, trustee, against H. C. Lindsey. Judgment for the plaintiff, and defendant appeals. Affirmed.

H. C. Lindsey, of Waco, for appellant. Downs & Webb, of Waco, for appellee.

Findings of Fact.

JENKINS, J. On October 22, 1881, Peter McClelland, Sr., made a will, and on August 17, 1886, executed a codicil thereto. About a month later he died, and said will and codicil were duly probated in McLennan county. The appellee is the duly qualified and acting trustee under said will. This is an agreed case under article 1949, R. S., the issue as agreed upon being:

"Whether or not any of said real estate of the said Peter McClelland, Sr., or any of the funds arising therefrom or rent or profits in the hands of said defendant, John K. Rose, trustee, is subject, either in law or in equity, to the debts of Peter McClelland, Jr."

The issue is raised by the fact that appellant being the owner of a valid judgment against Peter McClelland, Jr., caused an execution issued thereon to be levied upon a certain lot in Waco, Tex., which was the property of Peter McClelland, Sr., at the time of his death, and in the possession of appellee as such trustee at the time of the levy. Appellee obtained a temporary injunction against the sale of said property, alleging that Peter McClelland, Jr., had no interest therein. Said injunction having been made perpetual, appellant has brought the case to this court for revision.

So far as the issues here involved are concerned, it is necessary to set out only the fourth, fifth, and eight items of the original will and a portion of the codicil, as follows:

"Item 4.—I give and bequeath to my beloved son, Peter McClelland, Junior, should he sur-

---

vive me, all the residue of my estate, real, personal and mixed, to be received, however, and enjoyed by him in futuro, upon the terms, conditions, incumbrances, trusts and stipulations herein provided for, which said estate shall be held by my executors, controlled and managed as herein provided, in trust for my said son Peter, for twenty-five years from and after my death, before the same shall be turned over to my said son, except such provisions and legacies as are herein made for the support and maintenance of my said son during the said period of twenty-five years, should he live so long.

"Item 5.—I also give and bequeath to my said son, Peter, one hundred dollars per month, to be paid to him from and after the date of my death, in cash, for his maintenance and support, in monthly installments, so long as he shall remain single, or until he shall come into possession of my estate as herein provided; but should my son marry before or after my death, this special legacy shall be increased to one hundred and fifty dollars per month from and after the date of such marriage to be paid to him in cash in monthly installments for his maintenance and support after my death, by my executors as herein provided, which shall be a charge upon my estate until he comes into the possession of same as herein provided, or dies; and in case of such marriage my executors shall provide, by purchase or otherwise, for my said son Peter, out of my estate, a suitable house for him to live in, including lots, grounds and outbuildings, without charge to him, not to exceed in value the sum of five thousand dollars, if purchased by said executors for his use and enjoyment; but upon the death of my said wife Joanna, my said son Peter, first having so married, may, at his option, move into, live at and enjoy the homestead bequeathed to her during her life free of charge, in lieu of any other provisions for a home, until he shall come into the possession of my estate according to the provisions of this will.

"Item 8.—Upon my death and after the probate of this will, as aforesaid, my executors accepting and qualified to act as aforesaid, are hereby authorized and empowered to take possession of my entire estate, whether in money, real estate, personal or mixed, and the same to keep and hold in their possession and care, upon the trusts, terms and conditions herein provided for, for the full period of twenty-five years after my death, should my son, Peter, live so long; and at the expiration of twenty-five years my said executors shall turn over to my said son, Peter, if living, the entire residue of my estate, whether money, real, personal or mixed, with the increase and accretions to the same as provided for herein, after paying the charges of every kind and legacies herein provided for out of the same; but should my son, Peter, die before the expiration of said period of twenty-five years after my death, or before I do, then it is my desire that said trusts shall end, and that my heirs at law shall take my estate clear of the trusts, charges and incumbrances herein created, according to the laws of the state of Texas, and that my executors turn the same over to them, charged, however, with the bequests to my wife, if living."

CODICIL.

"* * * I further desire to continue the trusts created herein in my executors for and during the natural life of my son, Peter, but if in their judgment he is provident and careful, they may make such advances out of the estate, as they may think right and proper, over and above the provisions made herein for him in said will."

Items 9 and 10 provided that the trustees should collect rents and other sources of income, insure buildings, pay all necessary charges against the estate, including attorney's fees, make repairs, rebuild in case of loss by fire, and, after the payment of certain legacies, to invest the residue of accumulations in stock of the State Central Bank of Waco, or in government securities, or rent-paying real estate, as in their judgment might seem best for the interest of the estate.

The wife of Peter McClelland, Sr., declined to take under the will, the estate was partitioned, and her interest therein was set apart to her. She was the stepmother of Peter, Jr.

From the agreed statement of facts herein, we quote as follows:

"That Peter McClelland, Jr., was a man of weak character and intellect, of no business capacity whatsoever, and with no capacity to take hold and retain property. That said Peter McClelland, Jr., was easily influenced by designing men, and could be easily wheedled out of his property, and that these facts were known to his father at the time of the making of the will, and at the time of the making of the codicil. That at the time of the making of the will Peter McClelland, Jr., had been married, but his first wife was dead; that at the time of the making of the codicil he was married to his second wife, who was Miss Sabens. That Peter McClelland, Sr., had a violent and persistent dislike for the Sabens, and particularly for Judge Sabens, father of Peter McClelland Jr.'s wife. That Peter McClelland, Sr., had taken a prejudice against Judge Sabens, who was United States District Judge for the Eastern District of Texas, and was strongly of the opinion that Peter McClelland, Jr., had been inveigled into the marriage with Miss Sabens for the purpose of her becoming possessed of Peter McClelland Sr.'s estate. That at the time of the making of the will, Peter McClelland, Jr., and his father were on good terms; but at the time of the making of the codicil there was a bitterness existing between Peter, Jr., and his father. That Peter, Jr., was regarded by his father as having no feeling for him; that Peter, Jr., left the state of Texas to visit Atlanta while his father was on his dying bed, and only went to see his father at the solicitation of others shortly before his death upon his return. That affectionate relations existed between Peter McClelland, Sr., and his collateral kin interested in said will, especially as to Mrs. Grismer, his niece, Hugh McClelland, his nephew, and Mrs. Houston, his sister, who lived in Illinois. That shortly before his death he visited his sister, Mrs. Houston, in Illinois, and spent a number of weeks with her; and that he often visited his other collateral kin; and that he had given 200 acres of land to Mrs. Grismer, and her home, and assisted Hugh McClelland with various gifts of property, showing an affectionate regard for all of his collateral kin interested in said will. That he gave Mrs. Grismer and Hugh McClelland 220 acres of land each. That Peter McClelland, Jr., was weak intellectually and incapable of taking an education. That he had been sent home from school for the express reason that it was impossible to teach him anything. That at the time of the making of the codicil, Peter McClelland, Sr., and his wife, Joanna McClelland, had given Peter McClelland, Jr., property in the city of Waco to the value of at least $40,000, being the property he owned at the time of the making of the codicil, and which property he squandered directly after his father died. * * * That Peter McClelland Sr.'s controlling passion in life was the love of property and its accumulation, and that his son, Peter, was always secondary in his thoughts to his property, and that he was tormented at the time he made his codicil with the thought that Peter would in

some manner get possession of his property and waste and squander it. That Peter, Jr., was 31 years old at the date of said codicil, being born in 1856."

### Opinion.

[1] The will of Peter McClelland, Sr., created an active trust and vested the legal title of his entire estate (except certain specific bequests comparatively unimportant, and which need not be described) in his trustees, together with all accumulations thereof during the continuance of such trust. Dulin v. Moore, 96 Tex. 138, 70 S. W. 742; 1 Perry on Trusts, §§ 304, 305, 313; 3 Pomeroy's Eq. Jur. § 991.

The trust created by said will is what is known as a spendthrift trust, which has been called the American doctrine. "This doctrine is that it is lawful for a testator or grantor to create a trust estate for the life of the cestui que trust, with the provision that the latter shall receive and enjoy the avails at times and in amounts either fixed by the instrument or left to the discretion of the trustee, and that such avails shall not be subject to alienation by the beneficiary nor liable for his debts." 26 Am. & Eng. Ency. Law, 139. Inalienability by the cestui que trust, and nonliability for his debts, is a necessary incident to a spendthrift trust, whether the instrument creating the same does or does not so expressly declare. The provisions of the will here under consideration meet all of the necessary requirements of a spendthrift trust. McClelland v. McClelland, 37 S. W. 357; Wood v. McClelland, 53 S. W. 382; McClelland v. McClelland, 46 Tex. Civ. App. 26, 101 S. W. 1176; Sanger v. Rovello, 137 Fed. 1022, 97 C. C. A. 669; Patten v. Herring, 9 Tex. Civ. App. 640, 29 S. W. 388; Herring v. Patten, 18 Tex. Civ. App. 147, 44 S. W. 50; Gamble v. Dabney, 20 Tex. 77; Wallace v. Campbell, 53 Tex. 234; Day v. Slaughter, 87 Va. 758, 13 S. E. 478, 13 L. R. A. 212, 24 Am. St. Rep. 682; Mason v. Trust Co., 78 Conn. 81, 61 Atl. 57, 3 Ann. Cas. 586; Seymour v. McAvoy, 121 Cal. 438, 53 Pac. 946, 41 L. R. A. 547; Lampert v. Hayde, 96 Mo. 439, 9 S. W. 780, 2 L. R. A. 116, 9 Am. St. Rep. 358; Nichols v. Eaton, 1 Otto (91 U. S.) 716, 23 L. Ed. 256; 1 Perry on Trusts, § 393; 3 Pomeroy's Eq. Jur. notes pp. 1843–1847.

[2] The trust in the instant case is during the life of Peter McClelland, Jr. The appellant does not deny the existence of such trust prior to the expiration of 25 years after the death of Peter McClelland, Sr., but his contention is that Peter, Jr., having survived that period, the absolute title became vested in him by virtue of item 4 of the will; that the codicil did not revoke this item, for the reason that the expression "trusts created herein" refers only to trusts created by the codicil. We do not think that there is any merit in this contention. The codicil creates no trust, unless it be the right of Peter, Jr.,

to occupy the homestead of the testator after the death of his wife, on condition that Peter, Jr., convey to the estate the homestead theretofore given him. The codicil expressly declares that:

"It is now here made a part of said will as fully as if it had been originally incorporated therein."

Such would have been its legal effect without such declaration, but such declaration clearly shows that the testator understood that the original will would be modified by the statements in the codicil contrary thereto, and that he so intended. The trust referred to in the codicil referred to the spendthrift trust created by the will, and extended the same during the life of Peter McClelland, Jr. If we incorporate the change thus made by the codicil in the fourth item of the will, and read the same as though it had been a part of the original will, said item 4 will read:

"* * * Which said estate shall be held by my executors controlled and managed as herein provided in trust for my said son Peter during his natural life."

Such being our construction of the will as modified by the codicil, we hold that Peter, Jr., took no interest thereunder that is subject to his debts.

But the appellant argues, with much plausibility, that the only contingency upon which the estate was to go to the collateral kin was that Peter, Jr., should die before the expiration of 25 years after the death of the testator, and as that period has elapsed, if Peter, Jr., does not take under the will, the testator died intestate as to the remainder of his estate after the expiration of the trust, and that Peter, Jr., took the same as the only heir of his father. Such is the construction placed upon the will by the Circuit Court of Appeals, 208 Fed. 503. In that case the liability of the estate for the debts of Peter, Jr., was not involved. In the instant case, we are not concerned with who shall take the estate upon the termination of the trust, except in so far as that issue involves the liability of the estate for Peter Jr.'s debts.

[3] The intention of the testator is said to be the polar star of guidance in attempting to arrive at a proper construction of a will, and to this intent, when ascertained by legal means, all other rules for the construction of written instruments must yield. Some of the recognized rules for the construction of wills may be stated as follows:

"It is always a safe * * * in approaching the interpretation of a word or phrase to start with a clear view of the testator's general intent, or, as it is frequently called, the scheme of his will." Baeder's Estate, 190 Pa. 610, 42 Atl. 1102.

"In construing a will all its provisions should be looked to for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, * * * any particular paragraph of the will, which, considered alone, would indicate a contrary intent must yield to the intention manifested by the whole

instrument. McMurry v. Stanley, 69 Tex. 230, 6 S. W. 412; Dulin v. Moore, 96 Tex. 135, 70 S. W. 742.

"The law will not suffer the intention to be defeated, merely because the testator has not clothed his ideas in technical language." Bell County v. Alexander, 22 Tex. 358, 73 Am. Dec. 268.

When one makes a will it is to be presumed that he intended to dispose of his whole estate, and intestacy is never permitted if by any fair construction or interpretation it can be avoided. Phillips' Estate, 205 Pa. 504, 55 Atl. 210, 97 Am. St. Rep. 746; Willard v. Darrah, 168 Mo. 660, 68 S. W. 1025, 90 Am. St. Rep. 468; Watson v. Watson, 110 Mo. 164, 19 S. W. 545.

The intention and meaning can best be ascertained by the court putting itself, as far as may be, in the place of the testator and reading the will in the light of his environments at the time the will was made. Ro Bards v. Brown, 167 Mo. 447, 67 S. W. 247.

[4] Laying aside technical rules, and using only common sense, no one can, for a moment, suppose that it was the intention of Peter McClelland, Sr., to fail to dispose of his entire estate. He did so in his original will, directing that upon a certain contingency the remainder should go to Peter, Jr., and upon another contingency that it should go to his collateral kindred. There is nothing to indicate that he had changed his intention as to disposing of his whole estate when the codicil was executed. Reading the whole will, including the codicil, in the light of his surrounding circumstances, we think that it must be held that the testator intended to vest the remainder of his estate either in Peter, Jr., or in his collateral kin. The original intention to vest such estate in Peter, Jr., if he should live 25 years after the death of the testator, is inconsistent with the continuation of the trust for the life of Peter, Jr., the fee, management, and control being vested in the executors for that length of time, rendering it impossible that Peter, Jr., should take the absolute fee during his lifetime, as he might have done under the original will. Of course, he could not take such estate after his death. Neither could the collateral kindred take until the trust should cease by the death of Peter, Jr. Did the testator by the codicil, which entirely eliminated the 25-year period as to the duration of the trust, intend to say that his collateral kindred should never take the remainder in any event, or was it his intention only to change the contingency upon which they should take? In each case the contingency was the termination of the trust, but the condition upon which the trust was to terminate was changed. No change is made in the general scheme of the will by the codicil. The estate is still to be managed by trustees, though their personnel is changed to some extent. The spendthrift trust is retained,

but continued for the life of Peter, Jr. No additional mention is made as to whom the trustees are to turn over the estate when the trust ceases. The fact that the testator made a will shows that it was his intention that whoever took the remainder should take as legatee and not as heir. Peter, Jr., being excluded by the codicil from ever taking, ought it not be held that it was the intention of the testator that his collateral kindred should take upon the termination of the trust? We think so. He so provided in the original will upon a contingency that might have happened. Upon the failure of that contingency Peter, Jr., was to take the estate free from the trust. What change had occurred in the environments of the testator when the codicil was executed? The agreed statement of facts shows a change in his relation to Peter, Jr., sufficient to account for the provision that he should never have any beneficial interest in his estate beyond the allowance made for his support. But there appears to have been no change in his feeling towards his collateral kin, his sister, niece, and nephew, for whom he had an affectionate regard. For these reasons we conclude that the testator did not intend to leave the residue of his estate after the termination of the trust undisposed of, but that he intended to will the same to his collateral kindred.

[5] But if we should be mistaken in our interpretation of the will of Peter McClelland, Sr., as stated in the foregoing portion of this opinion, we think that it is manifest from the language of both the will and the codicil, read in the light of the surrounding circumstances, that it was his intention that all of the residue of his estate, after the legacies were provided for, together with all revenues arising therefrom and all increase thereof, should remain intact in the hands of his trustees until the death of Peter, Jr., and whether it shall then go to the heirs of Peter, Jr., or to the collateral kin, they are to receive the same undiminished by any act of Peter, Jr., or of his creditors, or of any one else. The agreed statement of facts herein shows:

"That Peter McClelland Sr.'s controlling passion in life was the love of property and its accumulation, and his son, Peter, was always secondary in his thoughts to his property, and that he was tormented at the time he made his codicil with the thought that Peter would in some manner get possession of his property and waste and squander it."

It was the purpose of the codicil to forever preclude the possibility of his doing so. This purpose would be thwarted if Peter's creditors were entitled to sell the property under execution, and the purchasers obtain title thereto, even though their right of possession should be delayed until the death of Peter, Jr.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.