## Breathitt County, et al. v. Hammonds.

(Decided November 12, 1912.)

### Appeal from Breathitt Circuit Court.

1. Bridges—Authority of County to Collect Tolls on Bridge.—There appears to be no authority, express or implied, authorizing a county to collect tolls on a bridge in a county, and while it might be best for counties to have power to erect bridges and collect tolls, at least until they are paid for, they have no right to do so in the absence of an act of the legislature conferring such authority.

2. Same—Laches—Plea as Applied to Public Property.—The plea of laches and acquiescence constituting equitable estoppel cannot be made to apply to uses of public property.

LEWIS McQUOWN, CALLOWAY HOWARD, W. H. BLANTON and BYRD & HOWARD for appellants.

J. J. C. BACH, GRANNIS BACH and G. W. FLEENOR for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In 1898 the town of Jackson undertook to build a bridge across the fork of the Kentucky River which passes through the town. It was unable to float its bond for the purpose of obtaining the money with which to build the bridge, and it then induced the fiscal court of Breathitt County to build it. The fiscal court erected the bridge and collected tolls from those using it for several years. The bridge became defective and the fiscal court employed another bridge company to replace it with a new one at the price of $14,500 and this new bridge has continuously been and is now used as a toll bridge. The bridge originally across the river was removed and placed across Quicksand creek at a point near where it flows into the river. The tolls received from the bridges have been used to reduce the bonded indebtedness of the county to $10,000.00 and to build other bridges in the county.

This action was instituted in the name of the Commonwealth and nine citizens of the county who, possibly, cross this bridge more than anyone else. The action seeks to enjoin the county from continuing to use the bridge as a toll bridge. Breathitt County, the fiscal court and the keeper of the bridge were made defendants. They answered, in substance, setting forth the benefits to the county from the tolls received from the bridge and asked that they be allowed to continue the bridge as before. The lower court concluded that the county could not legally collect tolls and directed the issual of the injunction prayed for.

Appellants refer to the case of the town of Jackson v. The County of Breathitt, 32 Ky. L. R., 199, and claim that authorized the county to collect tolls from the bridge. In that case the town of Jackson sought to recover the bridge from the Breathitt Fiscal Court, claiming that the town had the right to the bridge as it had only turned it over to the county under an agreement that it should erect the bridge and collect tolls enough to reimburse it in the amount it expended in erecting the bridge and that it had several times over collected that amount, and the town claimed that the county could not hold the bridge as it had no franchise but that the town did. In the opinion in that case, this court said that the privilege to erect the bridge was not a franchise within

the meaning of the Constitution, and continued as follows:

"The bridge was necessary for the use of the public generally, and for their benefit, the county with the consent of the town constructed it. Its erection was as essential for the use of the citizens of the county as those of the town. It has none of the elements of a franchise such as is contemplated by the Constitution. The fact that the county collects toll on the bridge, or rents it out, does not affect the question of its right to erect or maintain the bridge."

With reference to the question now before us, the court said:

"The question of the right of the county to rent the bridge out or collect tolls thereon is not before us in this case, the allegations of the petition are not sufficient to present this question, and hence we express no opinion as to the right of the town or any citizen of the county to institute such proceedings as might be necessary to inquire into the right of the county to exact tolls from persons using this bridge."

Thus we see that the court in that opinion expressly declined to pass upon the county's right to collect tolls from the bridge. It is a general rule and has often been decided by this court, that a county has no right to do anything or engage in any business that is not expressly authorized by the statutes. We have searched diligently and have been unable to find any statute expressly or impliedly authorizing a county to collect tolls on a bridge in a county, nor have we been referred to any such authority. From the facts presented in this case, it appears to have been a valuable business for the county as a corporate body, but it was somewhat expensive, annoying and inconvenient to many of its citizens. To say that a county may go into the business of erecting bridges and collecting tolls on them, under the statutes that exist, would be equal to holding that a county may engage in the mercantile business or any other lawful enterprise. It may be best for the counties to have power to erect bridges and collect tolls, at least until they are paid for, but until the Legislature passes a law giving them such a power they have no right to do so.

It is claimed in one of the briefs for appellant that as the bridge has been so long in use as a toll bridge appellees are barred from the relief sought, by laches and acquiescence which constitute an equitable estoppel. This

plea cannot be made to apply to uses of public property. All the people of the county are interested in this matter and their failure to stop such use of the bridge in the past cannot be used against them in this action. It might, however, be used against them. or any one asserting an individual right growing out of the improper use of the bridge. This action is for the use of the public and appellees' interest are only incidental.

For these reasons, the judgment of the lower court is affirmed.