## City of Pineville v. Pineville Bridge Company, et al.

(Decided February 19, 1918.)

### Appeal from Bell Circuit Court.

1. Appeal and Error—Review—Matters Not Presented to Trial Court.—Where the question of dedication and acceptance of a bridge as a public thoroughfare was not raised in the trial court, it can not be considered upon appeal.

2.  Municipal Corporations—Agreement of Officers—Estoppel.—A municipal corporation can neither be bound nor estopped by private agreements and acts of its officers.

3.  Bridges—Franchises—Tolls.—The right to exact tolls for use of a bridge is not incident to the ownership of property, but is a prerogative of the state and may be exercised only when, and in the manner, delegated by statute.

4.  Bridges — Charter — Construction — Implied Powers.— A bridge company, incorporated under the general laws and authorized by its charter to construct, maintain, and own a wagon, vehicle and footbridge and to have such other powers as may be necessary to conduct the business and promote and carry on the objects and purposes for which it was organized, has no express authority to exact tolls for use of its bridge located wholly within the state' and such authority can not be implied from its charter.

5.  Parties—Party in Interest—Municipal Corporations.—A municipal corporation may maintain an action to enjoin the collection of unauthorized tolls on a bridge located within its limits.

6.  Pleading—Answer—Affirmative Denials.—An affirmative defense that is in effect but a denial of the allegations of the petition need not be traversed.

7.  Pleading—Answer—Facts Not Constituting Defense.—Where facts, pleaded by way of estoppel, are not sufficient to constitute an estoppel, it is immaterial that they were not traversed.

G. J. JARVIS, EDWARD C. O'REAR, J. C. JONES and J. B. ADAMSON for appellant.

JAMES M. GILBERT, M. J. MOSS, D. B. LOGAN and N. J. WELLER for appellees.

OPINION OF THE COURT, BY JUDGE CLARKE—Reversing.

Pineville is located in what is called a horseshoe bend of the Cumberland river. The tracks of the Louisville & Nashville Railroad Company are upon the opposite side of the river and, until 1912, its depot was located at a point across the river in a line with Pine street extended, at which point there was a public bridge connecting the depot with the city. The mountains descend abruptly to the railroad tracks, and there was no space at the old location for the erection of a new depot, large enough to take care of the increased traffic; so, the railroad company in 1912 constructed a new passenger depot about half a mile up the Cumberland river on a line with Kentucky Avenue extended. Between the old and the new depots, on the same side of the river, Straight creek

empties into the river, rendering it impractical to reach the new depot by crossing the bridge at the foot of Pine street, and it became necessary to construct a new bridge across the river at the foot of Kentucky Avenue, in order to reach the new depot from the city. Neither the city nor the county was able to build the bridge, because both were indebted to the extent permitted by the constitution.

The Pineville Bridge Company, incorporated and organized under the general incorporation statutes of the state by a number of citizens of Pineville, constructed a bridge across the river at the foot of Kentucky avenue. This bridge was completed and opened to travel in the latter part of 1913, and from January 1, 1914, until December 31, 1915, the city of Pineville and Bell county each paid to the Bridge Company $40.00 per month for the use of the bridge by the public. The city and county refusing to pay rent for the bridge after December 31, 1915, on January 1, 1916, the Bridge Company, or Robert Van Bever who had purchased the bridge at a judicial sale, erected a tollgate upon the bridge and began collecting toll from passengers and vehicles crossing the bridge.

On January 5, 1916, the city of Pineville instituted this action against the Pineville Bridge Company and Robert Van Bever, seeking to enjoin them from operating a toll-gate upon the bridge and, in the event that relief was not granted, that defendants be required to remove so much of the bridge as was alleged to be a nuisance, because constructed upon Cumberland Avenue; it being alleged that defendants were without authority to maintain the toll-gate upon the bridge; that the abutment upon the Pineville side of the river extended twenty-six feet into Cumberland Avenue, a public street of the city, and so located by the defendants without right or authority from any one, and the bridge thus located was an obstruction to Cumberland Avenue and a public nuisance. Defendants, by answer and amended answer, denied that the abutment of the bridge was located upon or interfered with any part of Cumberland Avenue; and alleged that defendants owned the ground upon which the abutment was located, claiming title thereto under a deed from the Continental Coal Corporation. Defendants also denied that they did not have the authority and right to maintain the toll-gate upon the bridge and to collect toll from all persons crossing the bridge. They further

pleaded as an estoppel, that they were induced to build the bridge by the citizens and officials of Pineville who, it is alleged, privately agreed with the stockholders of the Pineville Bridge Company that, if they would raise the money and erect a bridge connecting the depot with Kentucky Avenue that "the city of Pineville and Bell county, one or both, would pay the interest and upkeep on said bridge until such time as they were able to purchase and take over the bridge. That with that understanding the Pineville Bridge Company, a corporation, was organized and sufficient money was raised with which to erect said bridge and stock was issued to the subscribers to said fund for the money that they paid for said purpose. He says that this understanding was shared with all of the officials practically in the city of Pineville, and relying upon said assurance that the bridge would be taken over by the city of Pineville, that said money was subscribed and it would not have been subscribed but for said understanding"; that the city officials were present and assisted in locating the site for the bridge, its approaches and landing; and that the bridge was constructed "with the actual knowledge, acquiescence and active approval of the city officials of Pineville, and with the understanding that said bridge would be taken over and paid for by the city as soon as it was able legally to do so. He says that after said bridge was erected officers of the Pineville Bridge Company entered into a contract with the city council of the city of Pineville and with the county judge and fiscal court of Bell county, by the terms of which the city of Pineville and the fiscal court of Bell county paid monthly rental for the use of said bridge up until the first day of January, 1916." That, notwithstanding this contract, the city council and fiscal court refused and neglected to renew their contract for the year 1916; "that by reason thereof its income was cut off and that this defendant was forced as a result thereof to place a toll-gate on said bridge in order that he might obtain some income and revenue for the money expended."

After much proof was taken the case was submitted, and the chancellor dismissed the petition. Plaintiff appeals, insisting that the court erred, (1) in refusing to enjoin the collection of tolls on the bridge, (2) in refusing to order the removal of so much of the bridge as obstructed Cumberland Avenue, and (3) in failing to ad-

judge that the bridge had been dedicated and accepted as a part of a public thoroughfare.

1. As to this last contention, it is sufficient to say that no such question was raised in the trial court and we are, therefore, precluded from considering it.

The petition not only did not allege a dedication by the owners of the bridge or an acceptance thereof by any one; but, upon the contrary, it was alleged that the bridge was a public nuisance on the ground that it was built upon and obstructed the public street of the city, and to abate this nuisance the removal of the bridge was sought. It is, therefore, manifest that upon this appeal there is no basis whatever for a claim that the bridge had been dedicated or accepted as a public bridge.

2. It is conceded by appellees that the only contract of any kind that they ever had with the plaintiff was the contract for the payment of monthly rentals for the use by the public of the bridge for two years; and that the city declined to renew that contract when it expired on January 1, 1916. But, it is insisted, that, because the individual members of the city council and other city officials acquiesced therein, the city is estopped from complaining of the location of the bridge upon an unused portion of Cumberland Avenue, if in fact the bridge encroaches upon that street, which is denied; and that because the plaintiff has refused to renew its contract of rental, defendants were warranted in collecting tolls from the public for the use of the bridge in order to earn a return upon their investment in the construction of the bridge, induced by public officials in their private capacity. That a municipal corporation can neither be bound nor estopped by the private agreements or acts of its officials is so thoroughly established as scarcely to necessitate the citation of authorities, a few of which are: District of Highlands v. Michie, 32 Ky. L. R. 761; 107 S. W. 216; Creekmore v. Central Construction Co., 157 Ky. 336; section 2546, Kentucky Statutes.

Nor can the act of the city in contracting for the rental of the bridge for a period of two years work an estoppel against the city to complain of the acts of the defendants in erecting a toll-gate upon the bridge within the city and collecting toll from the general public, even if it could be said that the city, by reason of such contract, was estopped from denying the defendants' ownership of the bridge, because the right to collect tolls from the

public was never asserted by defendants until January 1, 1916, and the city never consented thereto or acquiesced therein but immediately began this action to enjoin same.

The right to collect tolls from the public is not a right incident to the ownership of the property, but is a prerogative of the state, which may be exercised by the individual only when authority so to do is conferred upon him by statute. In Elliott on Roads and Streets, vol. 1, p. 56, sec. 46, the rule is thus stated:

"The right to construct and maintain toll bridges and collect toll is a franchise which must come either directly or indirectly from the state. No person or corporation can exercise such a right unless authorized by the state, and toll can not be exacted for the use of a bridge connecting highways without such authority. A municipality has no implied authority to construct a toll bridge for pecuniary profit, nor to transfer such a right to others." In 5 Cyc. 1069 and 1071 respectively it is said:

"The power to grant franchises to individuals or companies to construct and maintain public bridges rests primarily with the state legislature and may be granted to whomsoever it chooses. The power may, however, be delegated to municipalities, and when this is clearly so, a franchise obtained from such authorities is equally valid with one granted by the legislature.

"The right to demand toll of the public for the crossing of a public bridge exists only by virtue of a statutory enactment, and such toll cannot be lawfully exacted unless the charter and conditions of the statute as to the building and maintenance, of the bridge are complied with."

In Clark v. Des Moines, 19 Iowa 223, 87 Am. Dec. 423, the court said that no person or corporation can erect a toll bridge and levy and collect tolls any more than a person or corporation can set up a ferry and levy and collect ferriage unless this be authorized by the law of the state, quoting De Jure Maris, Ch. III, where Sir Matthew Hale said: "No man can take a settled or constant toll even in his own private land for a common passage, without the King's license." See also Oregon v. Portland General Electric Co., 52 Or. 517; Virginia Cannon Toll Road Co. v. People, 22 Colo. 429, 37 L. R. A. 711; Breathitt County v. Hammonds, 150 Ky. 502, 150 S. W. 661, 42 L. R. A. (N. S.) 836.

It is insisted, however, by appellees that they have authority from the state to collect tolls in the articles of incorporation of the Pineville Bridge Company, which was incorporated under the general laws of incorporation of the state, for the purposes and with the powers therein expressed as follows:

Section 3. "The nature of its business and objects and purpose proposed to be transacted, promoted and carried on are the construction, maintenance and ownership of a wagon, vehicle and foot-bridge across Cumberland river at the east end of Kentucky Avenue in Pineville, Kentucky."

Section 11. "The corporation shall have power to borrow money to the extent of $20,000, to be used in the prosecution and conduct of its corporate business and to pledge or mortgage its property, real or personal, to secure the fulfillment of its contracts and shall have such other powers as may be necessary to conduct the business and promote and carry on the objects and purposes for which it is organized."

It is insisted that, as the purpose of the corporation was to erect and maintain a bridge with power, as stated in its articles of incorporation, to do all things necessary to conduct the business and to promote and carry on the objects and purposes for which it was organized, the corporation has power to collect tolls, because otherwise it would be unable to meet the expenses necessary to maintain the bridge that it has already erected, which was one of the express purposes for which it was created. But, this misconstrues the effect of incorporation, which gives to the corporate body only the authority to transact such business and to do such things as may lawfully be done by it or by an individual. As the right to collect tolls is a franchise and a prerogative of the state, which neither an individual nor a corporation may enjoy in the absence of express statutory authority so to do, it is clear that a corporation can not, by its articles of incorporation, confer such authority upon itself unless authorized to do so by the law under which it was incorporated. The defendant, Bridge Company, was incorporated under the general law of incorporation, in which there is no authority whatever for the collection of tolls for the use of bridges or the exercise of any prerogative of the state in reference thereto. The legislature has prescribed the manner in which the right to

exercise certain franchises may be obtained, and only such franchises as it has authorized and in the manner prescribed can be lawfully exercised. Such state prerogatives as it has not delegated, it has retained; and these no individual or corporation may enjoy.

Under section 1840, Kentucky Statutes, the county is given express authority to "erect and keep in repair bridges and other structures and superintend the same"; and this is the same authority the Pineville Bridge Company has under its articles of incorporation. The state has not authorized the county to collect tolls for the use of bridges, and this court in Breathitt County v. Hammonds, *supra,* said:

"It may be best for the counties to have power to erect bridges and collect tolls, at least until they are paid for, but until the legislature passes a law giving them such a power, they have no right to do so."

Until the legislature enacts a law authorizing the collection of tolls for the use of bridges within the state, no person or corporate body will have any right to collect such tolls.

In a note on page 715, 33 L. R. A., the annotator correctly summarizes numerous authorities as follows:

"As in the case of ferries so in the case of bridges or toll roads, it is generally agreed that they cannot be maintained even when entirely on private premises without a franchise when they are open to the public indiscriminately on payment of the regular toll. The ground of this doctrine does not seem to have been very clearly declared. It may be said, as it has been said in some cases, that the opening of such a way across private premises and offering its use to the general public, subject only to the tolls, constitute a dedication to the public, but it would seem that if so the dedication might on principle be made on condition of the payment of tolls, and that there ought to be no reason why any man who chose might not open a road for public use subject to this condition.

"The ultimate reason for denying this right seems to be that public policy requires some governmental regulation of such roads in order to prevent the collection of exorbitant rates from travelers who might be unfamiliar with the locality, and while attempting to follow the usual course of travel be unreasonably mulcted. A further ground of public policy would be the prevention of

the disputes that might arise  between  travelers  and private owners of toll roads if there was no regulation of them.  Whatever may be the true basis of the doctrine, it must be regarded as well settled law that toll roads or bridges can be maintained only under a franchise.  The decisions to this effect are numerous.''

In every instance where, under our statute, tolls are authorized to be collected from the public governmental regulation to prevent the collection of exorbitant rates is prescribed; but the defendant, if its contention is to be sustained, has by its simple act of incorporation possessed itself of the power to collect tolls from the public free from any regulation by the government or any one else, unless perchance it might after protracted litigation be limited by the courts to reasonable charges. So, even if we consider that the defendants' bridge does not encroach upon Cumberland Avenue but is wholly on private property, they could not set up a toll-gate thereon and collect tolls from the general public without express statutory authority so to do.  They did not have this authority and the city could maintain an  action  against them for an injunction, and the court erred in denying the relief sought.  St. Marys v. Hope Natural Gas Co., 76 S. E. 841, 43 L. R. A. (N. S.) 994.

As the city asked for a mandatory injunction for the removal of such portion of the bridge as it claimed was an obstruction to Cumberland Avenue only in the event that the injunction against the maintenance of the toll-gate was denied and as it was entitled to the primary relief sought, we do not deem it necessary to pass upon the question of whether or not it could have required the defendants to remove that portion of its abutments alleged to rest upon Cumberland Avenue, especially since it is not clear from the evidence whether, in fact, this abutment is built upon a portion of the street or wholly upon the property of the defendant.

Another contention of appellees is that because plaintiff did not traverse the affirmative allegations of the answer and amended answer to the effect that the defendant owned the ground upon which the abutments of the bridge were constructed, and that the bridge was constructed with the knowledge, approval and acquiescence of the city officials and thereby the city was estopped, should be taken as confessed, and, if true, defeated the right of the city to any of the relief prayed for. To this

we can not agree because the allegations by the defendants that they owned the property upon which the abutment rested is but a traverse of the allegations of the petition that plaintiff owned a portion of this property; and as we have seen, the facts alleged as constituting an estoppel do not constitute a defense, and the conclusions of law pleaded are without effect.

For the reasons indicated, the judgment is reversed and cause remanded with directions to enter a judgment enjoining the defendants from maintaining the toll-gate, or collecting tolls for use of the bridge.