## City of Henderson v. Redman, et al.

(Decided September 26, 1919.)

### Appeal from Henderson Circuit Court.

1. **Municipal Corporations—Liability Upon Implied Contract.—**While a municipality can not ordinarily be held liable upon an implied contract, where the facts show that it has obtained money from the plaintiff wrongfully, or under the mistaken belief on the part of its officers and the plaintiff that the municipality had the right to receive the money, and for which it gave no consideration, the payor of the money would have the right to collect it from the municipality in a suit brought for that purpose.

2. **Municipal Corporations—Contract to Sell Bonds—Defenses—**Where a municipality contracted to sell to a purchaser its bonds, and received pay therefor, when it was without authority to issue the bonds, and they were actually void, the city, in a suit by the purchaser, can not rely, as a defense, upon the fact that the bonds were illegal and issued without authority.

3. Municipal Corporations—Action to Refund Money.—To make the municipality refund the money paid in such case does not violate the rule usually invoked for the protection of the taxpayer in suits against the municipality based on implied contracts, since the refund is no part of taxes collected but only what the purchaser paid.

4. Appeal and Error—Cross Appeal—When Allowed.—Under the Civil Code of Practice, section 755, a cross appeal will only be allowed to an appellee against an appellant, and is not permissible against a co-appellee; the only remedy for an appellee dissatisfied as to a judgment against him by a co-appellee being by original appeal.

R. S. MORRIS for appellant.

DORSEY & DORSEY for appellee, Annie Redman.

HENSON & TAYLOR for appellees, Youngblood and wife.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, Annie W. Redman, on March 21, 1913, sold and conveyed to the appellees and defendants below, R. W. Youngblood and wife, a house and lot in the city of Henderson for the consideration of $1,500.00, a small portion of which was paid in cash and the remainder with a note for $200.00 which Youngblood and wife executed to the vendor, and at the same time delivered to the latter eleven bonds of the city of Henderson of the face value of $100.00 each, which it is claimed were issued in payment for improving Jackson street in the city, and which work was ordered to be and was done under an ordinance duly passed by the city council pursuant to and under the provisions of section 3459a of the Kentucky Statutes, which is an act passed by the legislature at its 1912 session, and is chapter 113 of the published acts of that session. The title of the act purported to amend charters of cities of the third class, to which Henderson belongs.

The case of Hickman, Mayor, et al. v. Kimbley, 161 Ky. 652, was one brought by the owner of property abutting on a street which the city proposed to improve under the plan outlined in the amendment to enjoin the work, upon the ground that the statute and the ordinance enacted pursuant thereto was each unconstitutional. It was held that the amendatory act was unconstitutional in that the legislature in enacting it failed to comply with the provisions of section 51 of the Constitution.

In the later case of Henderson v. Lieber's Ex'r, et al., 175 Ky. 15, the city endeavored to enforce the collection of bonds which were issued in payment of improvements made to one of its streets, and to enforce a lien against an abutting piece of property, which improvements had been made pursuant to the provisions of the amendment above referred to, and which amendment provided for the lien attempted to be asserted. It was again held that the statute was unconstitutional, and that neither the city nor any holder of bonds issued for such improve- ments could assert any lien against the abutting property on the improved street.

Some time after the rendition of the two opinions re- ferred to, the plaintiff, Mrs. Redman, brought this suit against Youngblood and wife to recover not only the note for $200.00 which they executed in part payment for the purchase of the lot involved, but also to recover the face value of eight of the bonds which had been taken in part payment for the lot, three of which had been paid. The right to collect from the vendee the amount represented by the unpaid bonds, as alleged in the petition, was upon the theory that the bonds were void and their de- livery to the plaintiff constituted no payment. After the filing of the petition an amendment was filed, making the city of Henderson a party, and its answer denied all li- ability, relying, of course, upon the two opinions above referred to. Youngblood and wife resisted liability upon the ground that neither of them had endorsed any of the bonds, which were made payable to bearer, and that plaintiff possessed the same constructive knowledge of their vice as did defendants, and they were therefore ac- cepted *cumonere.* The answer was also made a cross- petition against the city, and a recovery against it in favor of defendants was asked in the event that plain- tiffs should recover judgment against them. To this cross-petition the city made the same defense that it did to the amended petition. After the issues had been made and the evidence taken, the cause was submitted, and the court on the authority of the two opinions, *supra,* held that the statute and the ordinance enacted pursuant thereto, under which the improvement was made, was each unconstitutional, but rendered judgment in favor of plaintiff against Youngblood and wife and gave them judgment over against the city for the same amount, on the ground that the payment of the money to it by de-

fendants in the purchase of the bonds was without consideration, and to reverse the latter judgment the city prosecutes this appeal, making all of the original parties to the suit appellees.

Since the rendition of the judgment appealed from this court, in the case of Cohen v. City of Henderson, 182 Ky. 658, had before it the question of the liability of the city to a purchaser of a similar bond issued by it to the contractor in payment for work done under the same unconstitutional amendment, and it was held that the city was not liable to the holder of the bond, nor was it liable to him for the value of the improvement, upon the ground, as urged, that it had the right under the charter, independent of the unconstitutional amendment, to improve its sidewalks and streets, in the same manner as had been done by the contractor under the invalid statute.

The appellant, city, for reversal relies upon the cases referred to and a long list of others from this court, holding in substance that persons who contract with municipal corporations must at their peril know the rights and powers of the municipality to make it, and the authority of the particular agent with whom it was made. Some of the cases so holding are Miles Auto Company v. Dorsey, 163 Ky. 692; Floyd County v. Owego Bridge Company, 143 Ky. 693; J. I. Case Threshing Machine Company v. Commonwealth, 177 Ky. 454; City of Princeton v. Princeton Electric Light & Power Co., 166 Ky. 730, 179 S. W. 1074; Trustees of Bellevue v. Hohn, 82 Ky. 1; 5 Rep. 730; German National Bank of Covington v. City of Covington, 164 Ky. 292, 175 S. W. 830; City of Pineville v. Pineville Bridge Co., 179 Ky. 375, 200 S. W. 659, and Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656, 167 S. W. 922. But according to our view the doctrine of those cases does not apply to the facts before us.

The Cohen case was not prosecuted upon the theory that the city was liable for money had and received *from the plaintiff,* for the manifest reason that he had paid it no money, since he had purchased his bond not from the city, but from a holder who had received it from the city in payment for work for which the city was not liable. Without going into details, in the other cases cited plaintiff sought to recover from the municipality either for articles sold to it without it having statutory authority

to purchase them, or without authority of the agent who made the purchase to do so, or for services rendered in the construction of improvements or otherwise, the contract for which was illegaly made or beyond the authority of the municipality to make. To illustrate: The city is not liable for the services of attorneys when employed by an agent without authority to do so; City of Covington v. Hallam & Meyers, 16 Ky. Law Rep. 128; City of Owensboro v. Weir, 95 Ky. 195, and District of Highlands v. Mitchie, 32 Ky. Law Rep. 761; nor for the repair of a county road under a contract made with the county judge without authority (Floyd County v. Allen, 137 Ky. 575); nor for the building of a bridge when the contract therefor was not entered into as the statute requires (Floyd County v. Owego Bridge Co., *supra*); nor for materials bought and used by the city clerk without authority (Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656); nor for the purchase of machinery for the use of the municipality by others than those authorized by the statute (J. I. Case Threshing Machine Co. v. Commonwealth, *supra*). Certainly the municipality would not be liable where the contract, although authorized and duly entered into, would create an indebtedness beyond the constitutional limit.

In each of the cases referred to, and many others which might be cited, the municipality got the benefit of the services, and it was urged that it ought to be made liable on a *quantum meruit* because of benefits received, but this contention was denied upon the ground that although the result was harsh, a due regard for *the protection of the taxpayer* demanded that such corporations should be held strictly to their statutory authority in the making of contracts and the expenditure of public funds; that if the doors were once opened for the violation of such authority, *the treasury might be depleted* and additional burdens placed upon the citizen *in the way of taxes.* In other words, it would pave the way for an indiscriminate expenditure of public funds with a possible failure to obtain value received. Thus in the Worrell Manufacturing Company case, *supra,* quoting from Bellevue v. Hohn, 82 Ky. 1, in laying down the reason for denying liability in such cases, this court said:

"Courts have found it necessary to execute the powers expressly granted and to refuse to make corporations

liable upon implied promises by reason of benefits received. *This is done for the protection of the inhabitants of the corporation,* and because the only power the corporation has is from the law creating it, and, instead of recognizing a more liberal rule, the courts are inclined to hold corporations and their agents within the letter of their grant.''

Further along in the same opinion, as if to emphasize the reason for the doctrine, it is said: ''It may be that an occasional injustice will result; but it is better that this should be than that the taxpayers of a city, whose burdens are already heavy, *should be subjected to an increased burden* imposed by unauthorized agents.''

Again, in the Cohen case, *supra,* it is said:

''While the equities of this case clearly weigh in favor of the appellant, and the result seems harsh, the setting aside of the well established principles of law, to save him from the consequences, can not be justified, as the evil consequences which would flow from a contrary holding would be unending.''

In a former part of the opinion it was shown that the ''evil consequences'' referred to were those that would operate to the detriment of the taxpayer. Indeed in none of the cases do we find any other ground upon which to base the doctrine which they announce, the soundness of which we do not question. But, like all other doctrines or rules of law, when the reason for it ceases, its application should also cease.

In the instant case the city, by its council, had authorized the mayor and clerk to issue bonds of the nature purchased by the appellee, Youngblood, and to the amount which he purchased. After that he applied to the mayor, and both of them acting under the belief that the bonds were valid (they being duly signed and executed) he issued his check payable to the city of Henderson and delivered it to the mayor, receiving therefor the bonds in contest. The check could not be cashed without being legally endorsed by the city, and the fact that the mayor may have wrongfully endorsed the check, or delivered it to one to whom the city was not justly indebted, can not, according to our view, affect the rights of Youngblood; for if the check was wrongfully disposed of, either by an unauthorized endorsement or an unauthorized delivery, such facts raise questions affecting the city and not the

maker of the check. The facts clearly present a case where both parties were mistaken as to the right of the city to either issue, sell or deliver the bonds, and one where it obtained $1,100.00 from appellee without any consideration whatever. In such case can it be said that it would be a *burden upon the taxpayer* if the city should be required to rectify this mistake and to restore the wrongfully obtained cash consideration? We think not. The difference between this case and those where only services, machinery or improvements have been rendered or furnished the municipality is perfectly apparent. In the latter class of cases no funds went into or were made payable to the treasury of the municipality, and if it were made liable the treasury would be drawn on without a corresponding amount having gone into it, and that, too, in payment for services or articles which the municipality did not have the right to purchase, or if so, it illegally purchased them. In such cases the amount adjudged to be paid would not be paid with a corresponding sum previously paid by plaintiff, but with money furnished by the taxpayer. The difference between the two classes of cases affords ample room for the application of a different legal principle. Suppose the city of Henderson had possessed the authority to issue and deliver the bonds in question, they being free from any taint of illegality, and Youngblood had paid for them but the city declined to deliver them either because the bonds were already sold, or for any other reason, could it then be said that the city could retain the money upon the ground that it should not be held liable upon an implied contract to refund it, or upon any other ground? Such a contention would be monstrous and would shock the conscience of enlightened jurisprudence. In the supposed case the transaction would be nothing more than the city agreeing to deliver bonds, and failing to do so after it had received payment therefor.

In the case before us the bonds delivered were in fact no bonds. They were mere scraps of paper, and we are unable to differentiate the case from the one where there was a failure to make any delivery.

But it is insisted that the Worrel Manufacturing Company case, and others referred to, hold that a municipality can not be held on an implied contract, and such seems to be the holding of that opinion, but the expressions therein with reference to the rule were made in the light of

the facts being dealt with, which were entirely dissimilar to those here presented, in that the collection was not sought for *money* paid to the municipality. However, if the doctrine of that and other cases should be construed to be of universal application so as to include cases like the one before us, there are still grounds upon which the plaintiff ought to be entitled to recover, they being (a) payment of money by a mistake, and (b) a fraudulent obtention of the money by the municipality for which it should be made liable in tort. Indeed, to so hold is not a departure from the doctrine of the cases relied on by the city and referred to above, for it is recognized in them that the plaintiff, although unable to collect from the municipality, may recover the consideration furnished by him if he can obtain it either with or without the processes of the court. Thus in the Owego Bridge Company case, *supra,* referring to the rule as announced by the Supreme Court of the United States in March v. Fulton County, 10 Wall 676, this court said:

"The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains *money* or property of others without authority, the law, independent of any statute, will compel restitution or compensation. Under this rule Floyd county will not be permitted to retain the bridges and not pay for them. Appellant having declined to pay for the bridges, appellee will be permitted to remove the bridges and all the material which it furnished in their construction."

The same right of the plaintiff is upheld in the cases of City of Bardwell v. Southern Engine & Boiler Works, 130 Ky. 222, and Floyd County v. Allen, 137 Ky. 534. See also Dillon on Municipal Corporations, section 961, the text being supported by cases from many of the states of the union.

It will be noticed that the principle last referred to permits the plaintiff to recover the *property* which his services furnished or created, if obtainable, and it permits him to recover from the municipality "money" which it had obtained from him without authority. But we are not without authority from this court holding that money illegally paid, or paid without consideration, to a municipality may be recovered from it. In the case of Trustees of the Town of Stanford v. Hite, 2 Ky. Law Rep. 386, and reported in full in 11 Ky. Opinions 145, it

was held that one who paid to the city money for a license which had been issued under a void ordinance could be recovered by the payor in a suit against the city, upon the ground that it had been paid by a mistake and without consideration. In the course of the opinion this court through Judge Pryor said:

"The corporation has no right to this appellee's money. He was under neither a legal nor moral obligation to pay it; and having received no consideration in any manner by reason of its payment, the corporation was properly required to refund it."

This is in accord with the fundamental principles of justice, and does not come within the rule requiring the court to protect the taxpayer by a strict construction of the powers and authority of the municipality or its agents, since he never had any interest in the fund to be protected, having in no way contributed to it, and we unhesitatingly adopt it as the correct doctrine in order to carry out the principles of right, justice and honesty between individuals, whether artificial or natural. But we go no further than to apply the principle herein announced to the facts of this case.

The record does not show that the city was indebted beyond the constitutional limit, and this defense can not prevail, even if it be conceded that the fact could be relied on in a case like this.

Since the pendency of the appeal a motion has been made in this court by the original defendants for a cross-appeal against plaintiff (a co-appellee), which motion was sustained, and it is now insisted that plaintiff's petition should have been dismissed in so far as it sought judgment against defendants, Youngblood and wife, for the $800.00 represented by the unpaid city bonds given as part consideration for the property purchased. We do not think, however, that defendants can in this court question the judgment rendered against them through the prosecution of the attempted cross-appeal. A cross-appeal is allowable to an appellee against an appellant only, and not against a co-appellee. This rule as applicable to practice in appellate courts is without exception so far as we are aware. Indeed the right of appeal in any case, as well as the right to a cross-appeal, is purely statutory, and unless it is provided for by statute, the litigant can not insist on it. 3 C. J. 352. Under this rule

the statute may provide for an appeal without providing for a cross-appeal, in which case no cross-appeal can be prosecuted. Hence, in the authority just referred to, it is said: ''As the right of appeal is purely statutory, where one party takes an appeal the other party can not take a cross-appeal unless it is authorized by statute.''

Although section 755 of the Civil Code provides for the prosecution of a cross-appeal, it has been construed to confine the right to an appellee dissatisfied with some relief granted against him in favor of an appellant. Smith v. Bank, 1 Met. 575; Gaar v. Bank Co., 11 Bush 180; Home Insurance Co. v. Gaddis, 3 Ky. Law Rep. 159; Mc-Kay v. Mayes, 17 Ky. Law Rep. 827; Marion National Bank v. Phillips, 18 Ky. Law Rep. 159; Asher v. Helton, 31 Ky. Law Rep. 9; Hessig v. Hessig, 130 Ky. 685, and Matney v. Edmonds, 179 Ky. 243. In the case last mentioned this court, in announcing the rule, said: ''A cross-appeal is only allowable in behalf of an appellee against an appellant; it is not permissible against the co-appellee.'' The other cases referred to state the rule in equally emphatic terms. If an appellee desires a review of any judgment which his co-appellee obtained against him, his only remedy is to prosecute an original appeal, since under the rule, *supra,* he may not obtain such review through the medium of a cross-appeal.

It might be insisted that, the cross-appeal having been heretofore granted, it is now too late to deny it, but the same conditions will be found to exist in the cases, *supra,* wherein the relief by cross-appeal was denied on final hearing, although the motion was previously granted. Besides, such a motion, when made in this court, is generally sustained as a matter of course, but when the case is heard upon its merits it will be allowed or disallowed according to the appellee's right thereto. In this case there is yet ample time for the prosecution of an original appeal by Youngblood and wife against plaintiff, if such a course is desired. For manifest reasons we therefore decline to express any opinion upon the questions sought to be raised by the attempted cross-appeal.

Wherefore, the petition for a rehearing is sustained, the former opinion withdrawn, the cross-appeal disallowed, and the judgment affirmed.