## Madison County, et al. v. Clay's Ferry Bridge Company.

(Decided January 27, 1920.)

## On Motion of the Defendant to Dissolve Injunction Granted by the Circuit Judge of the 25th Judicial District.

1. Bridges—Tolls—Collection of—Injunction Restraining Not Permitted.—A corporation owning and operating, under a charter granted in 1834 by an act of the legislature, a turnpike from Lexington to Richmond, this state, and also a bridge spanning the Kentucky river which, by authority of a later act of the legislature amendatory of its charter, it erected for public travel in connection with the turnpike, and for its use for such travel was authorized to charge and collect tolls, in addition to those charged the public for the use of the turnpike, had the legal right under its charter, after disposing of the turnpike, exclusive of the bridge and its approaches, by a sale to each of two counties of that part of it lying therein, to continue to operate the bridge and collect tolls for its use by the public; and also to sell and by deed convey to its successor, the present corporate owner, as it later did, the bridge and approaches together with the franchise or right to charge and collect tolls for the use of the bridge and approaches by the public; and as the defendant by its purchase of the property acquired the same right to operate the bridge and collect tolls of the public for its use that had been enjoyed by the former owner, the judge of the circuit court was without authority to restrain it by the injunction granted from exercising such right.

2. Bridges—Collection of Tolls.—Amendment of Charter.—The provisions of the charter granted the original corporate owner of the turnpike and bridge in declaring that it should have "perpetual succession, and all the privileges and franchises incident to a corporation, and shall be capable . . . of purchasing, taking and holding to them and their successors and assigns, and of selling, transferring and conveying in fee simple, all such lands, tenements, hereditaments and estate, real or personal, as shall be necessary to them in the prosecution of their works," . . . conferred upon it powers sufficiently broad to authorize the sale made by the corporation to the defendant of the bridge, approaches thereto and franchise or right to charge and collect tolls for the use thereof by the public, a schedule of tolls allowed to be charged, as well as authority to charge and collect them, being contained in section 2 of the act of 1836, amending the charter as originally granted.

3. Bridges—Authority for Sale.—Further authority for the sale is conferred by Kentucky Statutes, section 562, the requirements of which were admittedly complied with by the defendant, as, immediately following its purchase of the bridge, appurtenances and toll franchise, it was duly incorporated as therein provided;

its ownership and control of the property has been as such corporation and it has fulfilled all obligations with respect to its proper maintenance for the use of the public imposed on the orginial owner by its charter.

4. Bridges—Operation—Sale of.—There is no provision of the free turnpike act (Ky. Stats., sec. 4748, subsection 8), which confined the right of the former owner of the bridge and appurtenances to dispose of it to Madison and Fayette counties or either of them. The act does not prevent the sale of a turnpike or other appurtenant corporate property of a turnpike company in fragments, nor compel it to surrender without compensation such part of the turnpike or other corporate property as may not be purchased of it or taken from it by condemnation. Neither of the counties named, in the purchase made by it of such part of the turnpike as it acquired from the former owner, attempted to purchase of the latter the bridge and approaches, nor did they object to its retention of the property nor its continued operation of the bridge; therefore there was nothing in the way of its subsequent valid sale to the present owner, or of the right of the vendor to maintain and operate the bridge as a toll bridge.

5. Bridges—Collection of Tolls—Franchise—Taxation.—The franchise by virtue of which the defendant corporation charges and collects tolls for the use of the bridge by the public, whether it be called an "incorporeal hereditament, an interest in land, an easement or right of way," is certainly property of value and being property, it is taxable, alienable and transferable; therefore, its enjoyment by the owner cannot be prevented by injunction.

O. P. JACKSON, HOGAN YANCY, JOHN NOOLAN and J. M. SMITH for plaintiffs.

A. R. BURNHAM, JR., A. F. MOBERLY and T. L. EDELEN for defendant.

OPINION BY JUDGE SETTLE—Sustaining motion and dissolving injunction.

The object of this action, brought in the Madison circuit court by the plaintiffs, Madison and Fayette counties, against the defendant, Clay's Ferry Bridge Company, was and is to prevent that company from charging and collecting of the travelling public moneys by way of tolls for the use by the latter of an iron bridge spanning the Kentucky river at Clay's Ferry, Kentucky, owned and operated by it. On the hearing of the plaintiffs' motion therefor, a temporary injunction was granted by the judge of the Madison circuit court restraining the collection by the defendant of the tolls complained of; and the latter, by proper notice to the plaintiffs and motion

duly made for that purpose, now seeks at the hands of the writer of this opinion, a judge of the Court of Appeals, the dissolution of that injunction.

A brief statement of the facts out of which this litigation arose is essential to a proper understanding of the questions of law presented for decision by the motion of defendant to dissolve the injunction. The Richmond and Lexington Turnpike Company, which was incorporated in 1834 by an act of the General Assembly, under the corporate powers conferred by its charter constructed the present turnpike leading from Lexington to Richmond, which crosses the Kentucky river at Clay's Ferry. The charter permitted the erection of toll gates and the charging and collecting of tolls by the corporation for the use of the turnpike by the traveling public, and prescribed the rate of tolls to be charged. For several years after its completion the turnpike was used for travel without a bridge over the Kentucky river at Clay's Ferry, during which time, as for many years prior to the construction of the turnpike, a ferry, of which the Richmond and Lexington Turnpike Company was not the owner, was there operated, by the boats of which all persons, vehicles or stock finding it necessary in traveling the turnpike to cross the river, were ferried over it. In 1836, however, by another act of the General Assembly, amendatory of that of 1834, the Richmond and Lexington Turnpike Company was authorized to construct a bridge across the Kentucky River at Clay's Ferry and necessary approaches for the use of the traveling public in connection with its turnpike. The act of 1836 empowered the company to charge and collect tolls for all travel over the bridge, in addition to tolls collected for travel on the turnpike, but limited the bridge tolls to such amounts as were, or before the construction of the bridge had been, paid by  users  of the turnpike for ferriage across the river. Land on each side of the river for providing the necessary approaches to the bridge, was acquired and the bridge constructed by the Richmond and Lexington Turnpike Company shortly after the passage of the act; and from its completion until 1898 the bridge and approaches were owned and maintained by it and used by all travellers of the turnpike in crossing the Kentucky river by the payment to the turnpike company of the bridge tolls fixed by the act of 1836. By virtue of an act or acts of the General Assembly of

1898, conferring, among other enumerated powers, authority upon the fiscal courts of the several counties in which turnpikes were maintained to purchase such turnpikes and maintain them for the use of the traveling public free of tolls, that part of the Richmond and Lexington turnpike lying in Fayette county was purchased of the Richmond and Lexington Turnpike Company by the fiscal court of Fayette county, and that part of the turnpike lying in Madison county was purchased of it by the fiscal court of Madison county. Deeds were duly executed by the Richmond and Lexington Turnpike Company to the counties named conveying the interests thus purchased by them, respectively, in the turnpike. By the terms of both these deeds, however, the bridge at Clay's Ferry and the approach thereto on each side of the river, including the ferry landing on each side and amounting altogether to about 3¼ acres, were expressly excluded from the sales and conveyances made of the turnpike to Fayette and Madison counties, respectively, and the title thereto retained by the grantor, Richmond and Lexington Turnpike Company, which continued its ownership of same, operation of the bridge and the collection of tolls for its use by the traveling public, until January 2, 1907, when the property, including the bridge, approaches and ferry landing on each side of the river, the franchise and all charter rights of the Richmond and Lexington Turnpike Company, under the act of the legislature authorizing it to construct, own and operate the bridge, and collect tolls for its use by the public, was sold by it at public auction to Thomas J. Smith, W. S. Moberly and James Erskine at the price of $4,755.00.

The purchasers, as authorized by Kentucky Statutes, section 562, immediately organized a corporation under the corporate name of "Clay's Ferry Bridge Company," to which their bid for the property in question was assigned, followed by a deed from the Richmond and Lexington Turnpike Company conveying it the legal title thereto, including the franchise and all other corporate rights of the grantor above enumerated.

From that conveyance, January 2, 1907, until the granting of the injunction in this action, the Clay's Ferry Bridge Company, defendant herein, has owned, maintained and operated the Clay's Ferry Bridge, assumed and performed all obligations and duties imposed upon the former owner, Richmond and Lexington Turnpike

Company, by its charter, charged and collected tolls of the public for the use of the bridge as authorized by that charter, and year by year paid to the Commonwealth of Kentucky and counties of Fayette and Madison all taxes assessed against the property, including each year a tax upon its franchise.

In legal effect the injunction granted by the circuit judge as completely deprives the defendant of its property as if a forfeiture of its charter had been adjudged; for of what value to the defendant would be the bridge or its approaches without the right to charge and collect tolls for their use by the public? And how could a purchaser be found for the property, when its purchase would not invest him with the right to collect tolls for its use? Moreover the market value of the material in the bridge and of the ground at either end constituting the approaches, would be insignificant when compared with the loss resulting to defendant from the deprivation of its right to the tolls it has been accustomed to receive for the use of the bridge.

It is not meant that the conditions resulting from the granting of the injunction referred to will necessarily compel its dissolution, but as these conditions indicate the gravity of the situation in which the granting of the injunction has placed the defendant and give emphasis to the importance of the rights involved, they must be considered in passing on its motion to dissolve the injunction. Laying aside other questions raised by the defendant, consideration will first be given the really vital question in the case: Whether the defendant had the right to charge and collect the tolls, the collection of which is enjoined herein, the written opinion of the learned judge who granted the injunction declares it did not have such right, the reason given for the conclusion being that the act of 1898 providing for free turnpikes, repealed so much of the charter of the Richmond and Lexington Turnpike Company as authorized it to transfer its property and franchises to "assigns;" because of which only the county could purchase the property and franchises of a turnpike company. The soundness or unsoundness of this conclusion must be tested by the provisions of section 5 of the charter of the Richmond and Lexington Turnpike Company and those of section 562, Kentucky Statutes. After declaring the turnpike company a body politic and corporate and giving its corporate name, section 5 of the charter provides:

"And by the said name, the said subscribers shall have perpetual succession, and all the privileges and franchises incident to a corporation, and shall be capable of taking and holding the said capital stock and the increase and profits thereof, . . . and of purchasing, taking and holding to them and their successors and assigns, and of selling, transferring and conveying in fee simple, all such lands, tenements, hereditaments and estate, real or personal, as shall be necessary to them in the prosecution of their works; and of sueing and being sued, impleading and being impleaded, answering and being answered, defending and being defended, in courts of record, or any other place whatsoever; and also to make, have and use a common seal, and the same to break, alter and renew at pleasure. To make such rules, by-laws and regulations, not inconsistent with the laws or the Constitution of the United States and of this state, as shall be necessary for the well ordering the affairs of said company, and to do all and every other matter or thing, which a corporation or body politic may lawfully do."

Conceding the necessity of statutory authority for a sale by the turnpike company of its bridge and corporate franchise in question, as contended by plaintiffs, it will be observed that the language of the section, *supra*, is sufficiently comprehensive to confer upon the turnpike company the power "of purchasing, taking and holding to them and their successors and assigns, and of selling, transferring and conveying in fee simple, all such lands, tenements and hereditaments and estate, real or personal, as shall be necessary to them in the prosecution of their works." Obviously, it cannot be claimed that the powers thus given the turnpike company, were not broad enough to authorize the sale and conveyance by it to defendant of the Clay's Ferry bridge and appurtenances, including the right to charge tolls for its use. The right to charge and collect the bridge tolls sold and conveyed defendant by the turnpike company, was conferred on the latter by section 2 of the act of 1836, amendatory of its charter, and is not here disputed. If other authority for the defendant's purchase of the bridge and right to bridge tolls than that contained in section 5 of the turnpike company's charter be desired, it may be found in section 562, Ky. Stats., which provides:

"If the franchise and property of any corporation is sold, the persons who may become the purchasers, at private sale or under the judgment of the court, may organize a corporation for the construction, operation and management of the same; and such corporation, when organized shall have the same rights, privileges and franchises as have been granted to or acquired by the corporation purchased; and shall be subject to all the limitations, restrictions and liabilities imposed upon it; and, in addition thereto, shall be subject to all the provisions of this chapter. Such corporation shall be formed by articles of incorporation executed by the purchasers and associates, and which shall, in addition to the requirements of section 539 of this article, set forth a description of the property sold, and the decree under which the sale was made, if it was sold under a judgment, or if not, the deed conveying the property, the amount paid, and to and by whom, and such other statements as may be deemed necessary. . . ."

It is admitted that the defendant, following the purchase for its benefit of the Clay's Ferry bridge and appurtenances by its promotors, Smith, Moberly and Erskine, was duly incorporated as provided by the section, *supra*, that its ownership and control of the bridge and approaches have been as such corporation, and that it has fulfilled all obligations with respect to the maintenance of the property for the use of the public imposed by law and its charter upon the Richmond and Lexington Turnpike Company, the original owner.

It is not perceived that the provisions of what is known as the free turnpike act confined the right of the Richmond and Lexington Turnpike Company to dispose of the bridge and appurtenances to the counties of Madison and Fayette or either, as held by the circuit judge. Section 8 of the act, now subsection 8 of section 4748, Ky. Stats., provides:

"When the entire turnpike purchased by a fiscal court lies wholly within the county by which the same is purchased the transfer of title shall be made as provided in section seven, and thereupon, the charter, franchises, and so forth, of any such turnpike or gravel road shall be at once dissolved and terminated, but when any portion of any turnpike, which lies in more than one county, is purchased as herein authorized, the title to such part so purchased shall be conveyed to the county purchasing it in

the manner before recited, and such transfer shall in no wise affect the charter or privileges or franchises of any turnpike road company so selling such portion, as to the remainder of the turnpike of such company. But as to the part so sold the charter shall be and become terminated, and the company shall be at once released from any and all responsibility concerning such portion under its charter or the laws of the state.''

It is patent from the language of this statute that a sale of a turnpike, other appurtenant corporate property or franchises of the company owning it, may be made in fragments. In other words, by its provisions the county may purchase or acquire by condemnation proceedings any part of a turnpike lying in its limits, and by its further provisions the part not purchased remains the property of the turnpike company, to hold or assign or sell to a purchaser of its selection other than the county. The Clay's Ferry bridge and approaches, although essential to the use of the turnpike and in that sense parts of it, were not purchased by the counties of Madison or Fayette or acquired by condemnation proceedings, but retained by the turnpike company, which had the right to continue to operate them or sell the same to the defendant together with the franchise to collect tolls for the use by the public of the bridge; and, manifestly, if the right to charge and collect tolls for the use of the bridge exists, the public can have no interest in whether it is exercised by the original owner of the property or the defendant.

As insisted for defendant, the bridge would be mere ''junk'' without the right to the owner to charge and collect tolls for its use by the traveling public, and such right is a franchise valuable as property and can be assigned or sold. If, as has been repeatedly held in this jurisdiction, a ferry right is a franchise which can be assigned or sold the same is true of a franchise to operate a toll bridge. Dufour v. Stacey, 90 Ky. 288; Willis v. Calhoun, 145 Ky. 106; Trustees of Maysville v. Boone, 2 J. J. Mar. 227.

In Louisville v. Cumberland T. & T. Co., 224 U. S. 649, it was held that the city of Louisville could not interfere with the right of the Cumberland Telephone Company to exercise a franchise which had been granted by the city to the Ohio Valley Telephone Company and sold by the latter company to the Cumberland Company; the

opinion, among other things, declaring that whether such a franchise be called an incorporeal hereditament, an interest in land, an easement or right of way, it is property, and ''being property, it was taxable, alienable and transferable; and, as property, passed to the Cumberland Telephone and Telegraph Company under the express provision of the Kentucky Statutes (section 562), which as in force in 1900 declared that the consolidating company should be 'vested with all the property, business, assets, and effects of the constituent companies, without deed or transfer, and bound for all their contracts and liabilities.' ''

The authorities cited seem to be conclusive of the question under consideration, and, if so, it follows that the injunction issued in this case should not have been granted. Therefore the motion of the defendant to dissolve it is sustained and the injunction dissolved.

The cases of Breathitt Co. v. Hammonds, 150 Ky. 502, and City of Pineville v. Pineville Bridge Co., 179 Ky. 375, relied on by plaintiffs, are not in point, as in neither case did the bridge company have statutory authority or a corporate franchise to operate a bridge or charge tolls for its use. The conclusion arrived at upon the main question considered, renders unnecessary the decision of other questions raised by the defendant in the case. Chief Justice Carroll and Judge Thomas sat with me in vacation in the consideration of the motion and both concur in the conclusions expressed in the opinion. The other judges of the Court of Appeals were absent when the motion was passed on, but Judges Hurt and Sampson having heard the opinion read, also concur therein.