## Stone v. Town of Pewee Valley.

May 24, 1940.

Charles C. Marshall, Judge.

Guthrie F. Crowe and H. B. Kinsolving for appellant.

J. Ballard Clark for appellee.

220

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On October 13, 1933, appellant by way of ordinary action sought to recover of appellee, a town of the sixth class, on two promissory notes, one dated August 31, 1931, for $800, another dated August 14, 1931, for $1,000, each due in one year, and bearing 6 per cent interest. The petition asserted the execution of the notes "by the board of trustees" of the town and asked for judgment for the two amounts and interest.

At this point Wilhoite, a taxpayer, was permitted to file answer, in which he denied the liability of the city, charging collusion between the appellant and town officers in the execution of the notes, and likewise charging that the debts created thereby exceeded the limitations raised by certain sections of the Constitution and Statutes. He also charged that by reason of the attitude of the town's officers, no defense would be offered by the town. Upon the filing of this petition, by agreement of parties, the cause was transferred to the equity docket, and thus proceeded.

The plaintiff then filed an amended petition in which, after reasserting by adoption the allegations of his petition, added a third note for $900, dated June 5, 1931, due in one year with interest, subject to certain interest and principal credits. This pleading also noted the fact that the old board had been succeeded by a new board.

In regard to the note of June 5, 1931, it was said that one Davis, a quarryman, had contracted to sell the town certain crushed rock and screenings for use on its streets. That in order to pay for the materials as delivered, Stone loaned to the city $900; that the materials were furnished to and used by the city in street work; that from time to time Miller, in writing, instructed Stone to pay, and he did pay Davis for $900 worth of materials, whereupon the note was executed.

As to the $1,000 note, he says he advanced the sum of $972, as shown by the treasurer's books, and the transaction was authorized by the board. The $800 was loaned under the following circumstances. There had been a prior town bond issue floated, whereby a lien was created on all the property located in the town; the last

bond ($800) was due September 1, 1931, and in order to retire it, the town acting through its officers, executed the note, although he actually paid only the sum of $784. The difference in the two notes and amounts paid represented a discount.

It was also suggested that since appellant had nothing to do with keeping the records of the town, the court hear proof and if the records be not full and complete, and the proof justified it, such incomplete records be amended in conformity. He prayed for judgment on all the notes, and that he be subrogated to the lien of the holder of the $800 bond, which he had paid off for the town.

In another amended petition plaintiff pleads ratification by the board in directing that interest be paid on each note at various dates, and further that the transactions were sanctioned by appropriate resolutions made of record on various dates.

After the taking of proof by depositions, the appellee (and cross appellant) answered, first denying each and every allegation of the original and amended petitions. In a second paragraph it was affirmatively plead that the notes constituted no valid obligation of the town, because same were executed solely by Longmire, as chairman. Secondly, that at no meeting of the board of trustees was any ordinance or resolution voted on or passed by the board authorizing the borrowing of any money from appellant; that no "aye or nay" vote was taken or recorded on any motion, order, ordinance or resolution, authorizing the borrowing of the money as alleged, or creating any liability as against the city, and that by reason thereof the plaintiff is estopped to assert all or any one of his alleged claims. The plea of ratification was denied by later amended answer.

It is then alleged that such of the records as refer to any loan were not originally written in the minutes, having been inserted at a later date, in a different colored ink, and the interpolations were not in the minutes when signed, but made after the question of liability arose. It was admitted that the treasurer's books disclose receipts of divers sums, totaling $1,716, but that the minutes of the board show no such receipts, and no record shows the receipt of $900 from plaintiff. The final plea related to the matter of the town exceeding

its constitutional power in creating excessive debt, but this phase has no place in the discussion.

Thus the pleadings were completed and upon submission in chief, the court adjudged plaintiff recovery on his August 1931 note of $800, with interest, but denied recovery on the other two notes. Plaintiff was granted an appeal, and on motion in this court defendant, appellee, was allowed to prosecute cross appeal.

On both appeals and cross appeal, appellee argues that a city council speaks authentically by its records only. The town is not bound on the notes because there was no yea and nay vote taken on the proposition of borrowing money from plaintiff. Citing Section 3699, Kentucky Statutes. Secondly, parol evidence is inadmissible to supply omissions in official records, and the equitable rule as to money "had and received, does not apply because the town board did not authorize the borrowing, and further the action was predicated on contract and not money had and received," citing authorities on all points.

Appellant on his appeal, and on the cross appeal, argues that where a municipality obtains and uses money or property, even in the absence of authority, the law, independently of any statute, will compel restitution, this being justified under the common law on the ground that it is an action for money had and received by the municipality, being the same as money paid in mistake, or upon a consideration which fails, or money gotten through imposition, citing and relying on authorities.

Plaintiff gave his deposition as to the various transactions between himself and the town, showing how the various transactions were carried out, and in an unsatisfactory way undertook to show that the matters of loans by him were authorized by proper action. The chairman of the board, the town clerk, and the chairman of the street committee testified as to the various transactions, and the chairman of the board and clerk undertook, in the same manner, to demonstrate that the proceedings although not shown on the board's official records, were regular in every respect.

Objection to the testimony of each of these witnesses as a whole was sustained by the court, on the

theory, perhaps, that part thereof was an oral attack on official records. In part the court was correct, but the testimony of some of the witnesses as to transactions, was competent, and has been considered by us. This, we may observe, is particularly true as to the "bond" transaction to which we will refer later.

In taking the depositions it was stipulated that either party might read into the record such portions of the official minutes as might be desired, and this was done, in addition to the filing of photostatic copies of portions thereof, and of the treasurer's cash and disbursement book. Copies of the notes are also filed, and are in the ordinary form of promissory notes, signed: "Town of Pewee Valley, by C. E. Longmire, chairman." The excerpts from the minutes follow, the first relating to the alleged crushed rock transaction which was the basis of the $900 note.

"June 1, 1931.

"Mr. Miller was to see Mr. Wooldridge in regard to borrowing enough money to fix all roads and also to start work on roads, as soon as he saw Mr. Wooldridge.

"Borrowed from H. J. Stone, $900, June 5, 1935.

"John W. Potts, Clerk
"C. E. Longmire, Chairman.

"Meeting of August 3, 1931. Borrowed from H. J. Stone, August 14, 1931. August 31, $800." (The above, as does like notation in first meeting, follows all other business, and signed as was the above.)

July 3, 1932, first item of bills allowed was:

"H. J. Stone, interest on note due June 5, 1931. Voucher $369.63."

This and other orders were signed same as foregoing, and will not be repeated, unless indicated otherwise.

"June 5, 1933. Motion was made and carried to pay Mr. H. J. Stone $400 on $900 note, leaving a balance of $500.

"H. J. Stone paid on note voucher No. 392, $400."

The treasurer's record showed cash receipts as follows:

"Aug. 15, 1931, H. J. Stone..............$515.00
"      "      "      "   "      "      .................  85.00
"      "      "      "   "      "      ................. 372.00
"      "      "      "   "      "      ................. 744.00

"September 1931, Pewee Valley Bank voucher, $824, for bond and interest."

Turning again to ordinance book: This merely shows sums paid for road work as of July 6, 1931.

Miller, the road chairman, says he and other members of the board negotiated with appellant to furnish money to pay for rock for street purposes. "We received $900 worth, used at different places." He signed the contract with Davis, as road chairman, by "authority of the town board, we voted on it in order to borrow the money, and the town received the benefit of it." He did not know dates, amount delivered, or the number of truck loads; "we bought up to $900 worth. The loads were estimated, not weighed."

The contract with Davis, under which he was to deliver stone to the town, merely fixed the prices of ballast, chips and screenings, was signed by Davis, and approved by the road chairman. Appellant says in a general way that he took the "rock or stone" matter up with the board on two or three occasions; "they wanted to borrow the money and I let them have it;" the $1,000 note (August 14) was for borrowed money, which he let them have at that time, he "presumed for use on the street." As to the $800 note he says that the town had a bond at the Pewee Bank, due September 1, 1933, which he paid, the town executing the note to him.

An inspection of the photostatic copies shows that the notations with regard to the "borrowing" of the various sums from appellant were interpolated at times other than the regular meetings, at which the loan transactions were alleged to have been had. A reference to the depositions of the town clerk show this to be a truth rather than an inference, though we do not mean to say that the notations were made with any other design than as a feeble attempt to show that there were such transactions.

With respect to the crushed rock transaction, there

was a total failure of the records to show authority from the board for the chairman to purchase $900 worth of stone. The records do not show proper authority for creating the $1,000 debt by the execution of the note signed by the chairman, and further, going to the stricken testimony solely for the purpose of observation, we are clearly of the opinion that neither the chairman of the board, nor the clerk, so testified as to justify the court in ordering the records corrected, if indeed same could have been done.

The controlling law is Section 3699, Kentucky Statutes, which relates to towns of the sixth class, which reads:

"No ordinance incurring a liability, or requiring an appropriation of exceeding fifty dollars ($50.00) for any one object or purpose, shall be valid, unless the same be voted for (and the yeas and nays be so entered upon the journal) by four members of the board."

The construction and consequent effect of this statute are manifested in numerous cases in which we have been called upon to give it effect. These cases, or some of them at least, hold that a municipal executive administrative body speaks only by its official records, holding in some instances that the transaction in question is void in the absence of records showing the transaction, and in order to make such transaction valid, the manner and method provided by the statute must be in substantial compliance with the law. On these points we need not quote, but merely make reference to Knepfle's Executrix v. Town of Southgate, 194 Ky. 346, 238 S. W. 1051; Rockport Coal Company's Trustee v. Tilford, 222 Ky. 288, 300 S. W. 898; Trustees of Hazelgreen v. McNabb, 64 S. W. 431, 23 Ky. Law Rep. 811; Spalding v. City of Lebanon, 156 Ky. 37, 160 S. W. 751, 49 L. R. A., N. S., 387; Town of Hardinsburg v. Mercer, 172 Ky. 661, 189 S. W. 1117; Dunn v. City of Cadiz, 140 Ky. 217, 130 S. W. 1089. These we think are amply sufficient to sustain the contentions that the town is required to speak through its records, and that there should have been a more substantial if not strict compliance with the provisions of Section 3699, Kentucky Statutes, as to the taking and recording of the vote.

Here the records themselves, as exhibited, fail to

show any motion, vote or ordinance with relation to the purchase of the rock, or the execution of the notes, or any one of them, or any vote taken on any motion or the proposal to adopt a resolution or ordinance relative thereto. This is not a case where the minutes showing that an ordinance was "passed," the recording of the vote might be waived, or we might presume that it had received the requisite vote, as in Harrison v. City of Greenville, 146 Ky. 96, 142 S. W. 219, in which case the ordinance in question did not go as far in requirement as does Section 3699, Kentucky Statutes.

After a reading of these cited cases we have no hesitancy in saying that the chancellor was correct in denying appellant relief on the $1,000 and $900 notes. He was correct in holding that appellant was entitled to recover on the $800 note which was given him when he discharged the bond. The execution of this note did not serve to create any new debt, nor increase the liability of the town; neither did the transaction involve the making of an appropriation. Indeed counsel for appellee does not contend, as we view his brief, with great seriousness that the judgment should be reversed on his cross appeal.

Here the debt which was discharged was one created by a vote of the residents of the town. This seems to be admitted, and is clearly shown from admissible proof. The practical effect of this transaction was that appellant furnished money to the town, and its officers went to the bank, paid the bond, cancelled and perhaps destroyed it. The better practice would have been for the bondholder, on receipt of his money, to have assigned the bond to appellant. No one would have then questioned, nor could have questioned, appellant's right to hold the town to the payment of the bond. The town had the implied power to enter into such an arrangement as was manifested here, without compliance with Section 3699, Kentucky Statutes. Citizens' Nat. Bank's Trustee v. Town of Loyall, 262 Ky. 39, 88 S. W. (2d) 952; City of Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346.

In his prayer, particularly relating to the $800 note (bond transaction), appellant asked judgment for $824, with interest from August 31, 1933. The amount set out apparently included some past due interest. In the de-

cree the court gave appellant judgment for $824, with interest from August 31, 1931. This was manifestly (and admittedly) a misprision which may be corrected upon filing of the mandate, and thus avoid a reversal and re-mand, entailing further costs. The costs in this court should be taxed in proportion of two-thirds as against the appellant, and one-third against appellee. The judgment of the lower court is affirmed both on the original and cross-appeal.